In the Matter of the WELFARE OF
the CHILDREN OF N.F. and
S.F., Parents.

No. A07–152.

Court of Appeals of Minnesota.

July 24, 2007.

Jill E. Clark, Golden Valley, MN, for appellant N.F.

Jill M. Waite, Minneapolis, MN, for appellant S.F.

Michael O. Freeman, Hennepin County Attorney, Mary Martin Lynch, Assistant County Attorney, Minneapolis, MN, for respondent Hennepin County Human Services and Public Health Department.

Carrie E. Prentice, Assistant Hennepin County Public Defender, Minneapolis, MN, for children.

Howard S. Kleyman, Minneapolis, MN, for GAL.

Considered and decided by WRIGHT, Presiding Judge; STONEBURNER, Judge; and DIETZEN, Judge.

## OPINION

DIETZEN, Judge.

Appellants N.F. and S.F., the parents of G.F. and C.F., challenge a district court order adjudicating their children in need of protection or services (CHIPS). Appellants argue that the district court erred by concluding that their use of corporal punishment was "physical abuse" and created an injurious or dangerous environment under Minn.Stat. § 260C.007, subds. 6(2), (9) (2006), respectively. Specifically, appellants claim that (1) the record contains no clear and convincing evidence of physical abuse; and (2) the CHIPS statute is unconstitutional as applied to them because they have a fundamental right to use corporal punishment to discipline their children. Because the record contains no clear and convincing evidence of physical abuse or a dangerous environment, we reverse.

## FACTS

N.F. (mother) and S.F. (father) are married and are the parents of G.F. and C.F., who were 13 and 12 at the time of the hearing. During 2005, G.F. left home without permission on numerous occasions and, when confronted, either lied about it or refused to say where he had been or what he had done. The parents disciplined G.F. by withdrawing privileges and/or grounding him. But the parents continued to have behavioral problems with G.F. and decided to use corporal punishment. The mother had been told by a social worker that "the law doesn't say that you can't use physical force, the law says you can't leave marks and bruises."

In June 2005, the parents discussed Bible verses with G.F. that supported the use of corporal punishment. Specifically, they told G.F. that he would be paddled if he left home without permission or if he was disrespectful, that is, had a temper tantrum. He was also told that his father would administer the punishment, would not paddle him when he was angry, and that the number of times he would be paddled would be based on his age—one paddling per year. The parents then posted the Bible verses on the refrigerator as a reminder to G.F.

One evening later that month, the parents told G.F. and C.F. to get ready for bed. Subsequently, C.F. told his father that G.F. had left the house. When G.F. returned home about 10 to 20 minutes later, his father told him that he would get a "hot seat" (spanking) because he left home without permission. At the time, G.F. was 5'2" and 195 pounds. The father used a small maple paddle and paddled the back of G.F.'s upper thighs 12 times with "moderate force." When G.F. became disrespectful and had a temper tantrum, the father paddled the back of G.F.'s upper thighs 12 more times with "moderate force." G.F. then grabbed a kitchen knife and threatened to kill himself, but the

father was able to take the kitchen knife from G.F. The father then paddled G.F. 12 more times with "moderate force" and sent him to bed. G.F. then climbed out the bedroom window, left home without permission, and was picked up by the local police. G.F. reported to the police that his father had disciplined him.

In July 2005, the county filed a CHIPS petition naming G.F. and C.F., alleging that the discipline administered to G.F. on June 29 constituted physical abuse. The case was submitted on stipulated facts, but the court received the wooden paddle and photos of G.F. into evidence, and took testimony from the father regarding the impact of the proceeding on his employability.

The district court later filed findings of fact, conclusions of law, and an order for protective supervision. The court found that on June 29 the father had struck the child with a wooden paddle 36 times (12 times on three separate occasions). The court concluded that "striking a child with a wooden paddle 36 times is not reasonable or moderate physical discipline; it is physical abuse." It adjudicated the children in need of protection or services under Minn. Stat. § 260C.007, subd. 6(2), reasoning that G.F. had been a victim of physical abuse and that C.F. resided in the home with the victim and perpetrator. The court also concluded that the children were in need of protection or services under Minn.Stat. § 260C.007, subd. 6(9), because "the children's behavior, condition, or environment is such as to be injurious or dangerous to the children or others." This appeal follows.

## ISSUES

1. Was there sufficient evidence of physical abuse, excessive force, or a dangerous living environment to justify the district court's adjudication of G.F. and C.F. as children in need of protection or services?

2. Is Minn.Stat. § 260C.007, subd. 6(2) (2006), unconstitutional as applied to appellants?

## ANALYSIS

### I.

Appellants argue that the district court erred by concluding that the record contained clear and convincing evidence of physical abuse, that the children's living environment was dangerous or injurious to them and that, therefore, the children were in need of protection or services under Minn.Stat. § 260.007, subd. 6(2) (2006).

Because this case was presented on stipulated facts to the court, the material facts are undisputed. Consequently, we review the application of law to the stipulated facts de novo. *Morton Bldgs., Inc. v. Comm'r of Revenue*, 488 N.W.2d 254, 257 (Minn.1992); *In re Welfare of K.J.K., Jr.*, 620 N.W.2d 734, 736 (Minn.App.2001), *review denied* (Minn. Mar. 27, (2001)); *see also In re Welfare of Children of R.W.*, 678 N.W.2d 49, 54 (Minn.2004) (stating that questions of law, such as the interpretation of the statutory criteria for adjudicating a CHIPS petition, are reviewed de novo). Clear and convincing evidence is required to support a CHIPS petition. Minn.Stat. § 260C.163, subd. 1(a) (2006); Minn. R. Juv. Prot. P. 39.04, subd. 1; *In re A.R.M.*, 611 N.W.2d 43, 49 n. 2 (Minn.App.2000).

### A. Physical Abuse

Minn.Stat. § 260C.007, subd. 6(2) (2006), provides that a child is in need of protection or services when the child:

(i) has been a victim of physical or sexual abuse, (ii) resides with or has resided with a victim of domestic child abuse as defined in subdivision 5, (iii) resides with

or would reside with a perpetrator of domestic child abuse or child abuse as defined in subdivision 5, or (iv) is a victim of emotional maltreatment as defined in subdivision 8.[1]

■ Appellants argue that the term "physical abuse" requires proof of a physical injury. The above-quoted statute does not define the term "physical abuse," but it refers to the definition of "child abuse" in Minn.Stat. § 260C.007, subd. 5 (2006). Subdivision 5 defines "child abuse" as any act that involves a minor victim and violates statutes that criminalize assault, prostitution, sexual abuse, child pornography, and neglect, endangerment, and malicious punishment of a child.[2] Malicious punishment of a child means "an intentional act or a series of intentional acts with respect to a child, [which] evidences unreasonable force or cruel discipline that is excessive under the circumstances." Minn.Stat. § 609.377, subd. 1 (2006); *see also* Minn.Stat. § 609.379, subd. 1(a) (2006) (allowing parents to use "reasonable force" to restrain or correct their children).

Respondent argues that the focus of the CHIPS statute is on the child and that the term "physical abuse" contemplates not only physical injury but also any "bodily harm" including physical pain within the meaning of Minn.Stat. § 609.02, subd. 7 (2006).[3] Subdivision 7 defines "bodily harm" as "physical pain or injury, illness, or any impairment of physical condition." While we agree that the focus of the CHIPS statute is the protection of chil-

dren, we reject respondent's argument that physical abuse is the equivalent of bodily harm and, therefore, only requires physical pain.[4] Here, the relevant statute, Minn.Stat. § 260C.007, subd. 6(2)(i), clearly requires physical abuse and couples the term "physical abuse" with "child abuse" as defined in subdivision 5. We conclude that "physical abuse," like "child abuse," requires unreasonable force or cruel discipline that is excessive under the circumstances.

■ We turn then to an application of the law to the stipulated facts. Appellants argue that they have the right to use corporal punishment to discipline their children and that the force used was not excessive. Appellants suggest that we consider the age of the child, the seriousness of the child's offense, whether the child had notice of the discipline before the offense, the implement used, the degree of force, and any resulting injury to determine whether the punishment was unreasonable force or cruel discipline that is excessive under the circumstances. Respondent concedes that "parents clearly may use corporal punishment," but argues that the discipline was excessive. The district court concluded that "striking a child with a wooden paddle 36 times is not reasonable or moderate physical discipline; it is physical abuse," and, therefore, G.F. was "a victim of physical abuse."

■ The statute requires courts to analyze the relevant "circumstances" in deter-

1. The statute errantly references subdivision 8. Rather, subdivision 15 defines "emotional maltreatment."

2. Subdivision 5 incorporates by reference the statutory definitions of the applicable crimes.

3. Minn.Stat. § 609.02 provides general definitions applicable throughout the criminal code.

4. We also observe that "domestic child abuse," another term employed by Minn.Stat. § 260C.007, subd. 6(2), is defined as any "physical injury" to a minor. *See* Minn. Stat § 260C.007, subd. 13(1). Therefore, the contention that "physical abuse" requires only "physical pain" lacks merit. *See also* Minn. Stat. § 609.02, subd. 7 defining "bodily harm" and distinguishing physical "pain" from physical "injury."

mining whether the discipline was excessive. Minn.Stat. § 609.377, subd. 1. We conclude that the relevant circumstances in this case are the child's age, height, and weight; the seriousness of the infraction; the degree of force used by the parent; and the physical impact of the discipline. At the time of the incident, G.F. was 13 years old and weighed 195 pounds, the force used was "moderate," and the discipline was not cruel discipline that was excessive.

■ We recognize that the third set of spankings, administered after G.F. threatened suicide, is troublesome. Spanking a child for wielding a knife and making a suicide threat is probably not an appropriate parental response. But we do not conclude that the third set of spankings constituted physical abuse under Minn. Stat. § 260C.007, subd. 6(2). Specifically, we do not conclude that the force used was unreasonable or that it constituted cruel discipline that was excessive. Under certain circumstances, such discipline may constitute emotional maltreatment. But under the statute, emotional maltreatment means the "consistent, deliberate infliction of mental harm" on a child by a parent, which "has an observable, sustained, and adverse effect on the child's physical, mental or emotional development." Minn.Stat. § 260C.007, subd. 15 (2006). Emotional maltreatment does not include "reasonable training or discipline administered by the person responsible for the child's care or the reasonable exercise of authority by that person." *Id.* The record contains no evidence that would support a determination of emotional maltreatment. Appellants' chosen form of discipline for G.F.'s knife wielding and suicide threat may not have been the best approach under the circumstances, but parents, who are in the best position to make those judgments,

have a wide degree of latitude regarding the discipline of their children. *See Soo-Hoo v. Johnson,* 731 N.W.2d 815, 823 (Minn.2007) (stating that parents have a fundamental right to the care, custody, and control of their children that should not be interfered with except for grave and weighty reasons).

**B. Dangerous Environment**

■ Appellants argue the district court erred by concluding that the children's environment was injurious or dangerous to the children within the meaning of Minn. Stat. § 260C.007, subd. 6(9). That statute provides that a child may be in need of protection or services when the child "is one whose behavior, condition, or environment is such as to be injurious or dangerous to the child or others." The district court concluded that "the childrens' behavior, condition, or environment is such as to be injurious or dangerous to the children or others," and that "as evidenced by [G.F.]'s physical abuse, [appellants] have not adequately cared for their children."

In concluding that the children's environment was unsafe, injurious, and dangerous the district court relied solely on its prior determination that appellants' use of corporal punishment was physical abuse. On this record, we see no evidence that suggests an "unsafe," "injurious," or "dangerous" environment. Consequently, we reverse the district court's determination that the children's environment was unsafe, injurious, or dangerous under the statute.

**II.**

Appellants argue that Minn.Stat. § 260C.007 is unconstitutional as applied to them because it violates their fundamental right to discipline their children.[5]

5. Appellants do not argue that the statute is     facially unconstitutional or overbroad.

Because we reverse the CHIPS adjudication, it is not necessary for us to reach this issue, and, therefore, we decline to do so. *See State v. Hoyt,* 304 N.W.2d 884, 888 (Minn.1981) (stating that constitutional questions should not be addressed unless necessary to dispose of a case).

## DECISION

Under Minn.Stat. § 260C.007, subd. 6(2) (2006), "physical abuse" means unreasonable force or cruel discipline that is excessive under the circumstances. Based on the relevant circumstances set forth in the stipulated facts, the state did not prove the allegations of physical abuse by clear and convincing evidence. Therefore, we reverse.

**Reversed.**