**In the Matter of the WELFARE OF the CHILDREN OF N.F. and S.F., Parents.**

**No. A07–152.**

Supreme Court of Minnesota.

May 30, 2008.

Michael O. Freeman, Hennepin County Attorney, Mary M. Lynch, Assistant County Attorney, Minneapolis, MN, for Appellant Hennepin County Human Services and Public Health Department.

Bruce Jones, Faegre & Benson, L.L.P., Minneapolis, MN, for Guardian Ad Litem.

Jill Waite, Minneapolis, MN, for Respondent Father, S.F.

Jill Clark, Jill Clark, P.A., Golden Valley, MN, for Respondent Mother, N.F.

John Kingrey, Executive Director, Minnesota County Attorneys Association, Susan Gaertner, Ramsey County Attorney, Kathryn M. Eilers, Assistant County Attorney, St. Paul, MN, for Amicus Curiae Minnesota County Attorney's Association.

## OPINION

PAGE, Justice.

In 2005, S.F. disciplined his 12–year–old son, G.F., by paddling G.F. on the back of the upper thighs with moderate force a total of about 36 times. After a hearing on stipulated facts and limited witness testimony, the district court adjudicated G.F. and his younger brother, C.F., to be in need of protection or services (CHIPS) under Minn.Stat. § 260C.007, subd. 6(2) (2006). The boys' parents, S.F. and N.F., appealed. The court of appeals reversed the district court. Relying on the definition of "malicious prosecution of a child" under Minn.Stat. § 609.377, subd. 1 (2006), one of the crimes constituting "child abuse" under Minn.Stat. § 260C.007, subd. 5 (2006), the court held that "physical abuse" under section 260C.007, subdivision 6(2), "requires unreasonable force or cruel discipline that is excessive under the circumstances." *In re Welfare of Children of*

*N.F. & S.F.*, 735 N.W.2d 735, 738 (Minn. App.2007). The court further held that, considering such circumstances as G.F.'s age and weight, the force used was not unreasonable and the paddling was not cruel or excessive discipline. We granted review and now affirm the court of appeals as to its reversal of the CHIPS adjudication of G.F. and his brother C.F., but reverse the court of appeals as to its definition of "physical abuse."

At the adjudication hearing in November 2006, the parties stipulated to the basic facts, and our recitation of the facts reflects that stipulation. In 2005, G.F. weighed 195 pounds and was 5 feet, 2 inches tall. He left home that year without permission "numerous times." G.F. would then refuse to say, or would lie about, where he had been. G.F.'s parents, N.F. and S.F., first tried to change his behavior by withdrawing privileges and grounding G.F. In June 2005, the parents discussed with G.F. various Bible verses about corporal punishment and posted the verses on the refrigerator. The parents told G.F. that if he left home again without permission, or if he was disrespectful to them, he would be paddled once for each year of his age. The parents told G.F. that S.F. would do the paddling, but that S.F. would not paddle G.F. while S.F. was angry.

On June 29, 2005, instead of going to bed as instructed, G.F. left the house without permission shortly before 9 p.m. C.F. reported G.F.'s departure to his father. When G.F. returned, between 15 and 30 minutes later, S.F. told G.F. that he was going to get a "hot seat" for leaving home without permission. S.F. used a paddle, stipulated by the parties to be a "small maple paddle," to strike the back of G.F.'s upper thighs "approximately 12 times with moderate force." After G.F. had a temper tantrum, S.F. again paddled G.F. 12 times on the back of the upper thighs "with moderate force" for being disrespectful. G.F. then grabbed a knife and threatened to kill himself. S.F. disarmed G.F. and paddled him an additional 12 times, again with "moderate force." S.F. sent G.F. to bed, but G.F. climbed out his bedroom window. The police found G.F. around 11 p.m. as he was walking down the street. On July 5, 2005, Hennepin County Human Services and Public Health Department (County) filed a petition alleging that G.F. and C.F. were in need of protection or services. As a result, G.F. and C.F. were removed from the home and placed in foster care. The boys were returned to their parents' care on December 23, 2005.

At the adjudication hearing in November 2006, the parties, in addition to stipulating to the basic facts, also submitted as evidence the paddle and two photographs of the back of G.F.'s upper thighs. The photos show no bruising on G.F.'s legs; however, the record does not indicate when the photos were taken. In addition, S.F. gave limited testimony about the impact of the proceedings on his aspirations to become a teacher. The district court concluded that "[s]triking a child with a wooden paddle 36 times" was not reasonable or moderate discipline and therefore constituted physical abuse. The court further concluded that the boys' environment was injurious or dangerous and adjudicated both as children in need of protection or services (CHIPS) based on the physical abuse of G.F. The court continued the boys' placement in the care and custody of their parents, subject to compliance with a case plan that included, among other things, individual and family therapy and oversight by a county social worker.

N.F. and S.F. appealed the district court's CHIPS adjudication, arguing that the term "physical abuse" as used in sec-

tion 260C.007, subdivision 6(2)(i), requires proof of a physical injury. *In re the Children of N.F. & S.F.*, 735 N.W.2d at 738. The County argued that "physical abuse" should be considered the same as bodily harm under Minn.Stat. § 609.02, subd. 7 (2006), which includes physical pain but does not require other injury. *Id.* The court of appeals noted that the definition of "child in need of protection or services" under Minn.Stat. § 260C.007, subd. 6(2), "refers to the definition of 'child abuse' in Minn.Stat. § 260C.007, subd. 5." *Id.* at 738. The court then noted that "child abuse" under subdivision 5 requires violation of one of a list of criminal statutes, including malicious punishment of a child. *Id.* "Malicious punishment of a child," in turn, is defined as "an intentional act or a series of intentional acts with respect to a child, [which] evidences unreasonable force or cruel discipline that is excessive under the circumstances." *Id.* (quoting Minn.Stat. § 609.377, subd. 1). The court of appeals concluded, therefore, that " 'physical abuse,' like 'child abuse,' requires unreasonable force or cruel discipline that is excessive under the circumstances." *Id.* at 739. Citing G.F.'s age and weight and the fact that the force used was "moderate," the court concluded that "the discipline was not cruel discipline that was excessive." *Id.* The court also concluded that the district court's "dangerous environment" finding was premised on the erroneous finding of abuse and reversed the district court's CHIPS adjudication as to both G.F. and his brother. *Id.* We accepted the

appeal of the County and the guardian ad litem, and rejected the parents' cross-appeal of whether Minn.Stat. § 260C.007 (2006) is unconstitutional and quasi-criminal in nature.

## I.

Minnesota Statutes § 260C.007, subd. 6, defines a "child in need of protection or services" to include a child who:

> (2)(i) has been a victim of physical or sexual abuse, (ii) resides with or has resided with a victim of domestic child abuse as defined in subdivision 5,[1] (iii) resides with or would reside with a perpetrator of domestic child abuse or child abuse as defined in subdivision 5, or (iv) is a victim of emotional maltreatment as defined in subdivision 8.[2]

We first address the meaning of "physical abuse" as used in subdivision 6(2)(i).

▮ The meaning of "physical abuse" is a matter of statutory interpretation. Our primary goal in statutory interpretation is to give effect to the intent of the legislature. *Heine v. Simon*, 702 N.W.2d 752, 764 (Minn.2005). We cannot conclude that the statute is so clear and unambiguous that the phrase "physical abuse" requires no interpretation. *See ILHC of Eagan, LLC v. County of Dakota*, 693 N.W.2d 412, 419 (Minn.2005) (when a statute's meaning is plain from its language, judicial construction is not necessary). Nor does section 260C.007 provide an explicit definition of "physical abuse."

---

1. We presume this reference in the 2006 version of Minn.Stat. § 260C.007, subd. 6, which applies to these proceedings, should be to subdivision 13 of section 260C.007, which defines "domestic child abuse." The legislature recently corrected this apparent error by changing the reference to subdivision 13, which defines "domestic child abuse." S.F. 3674, 85th Leg., 2008 Reg. Sess. (Minn.2008) (enacted).

2. We also presume that this reference in the 2006 version of Minn.Stat. § 260C.007, subd. 6, which applies to these proceedings, should be to subdivision 15 of section 260C.007, which defines "emotional maltreatment." The legislature recently corrected this apparent error by changing the reference to subdivision 15, which defines "emotional maltreatment." S.F. 3674, 85th Leg., 2008 Reg. Sess. (Minn.2008) (enacted).

When the words of a statute are not explicit, we may consider such matters as the occasion and necessity for the law, the object to be attained, and the consequences of a particular interpretation. Minn.Stat. § 645.16 (2006). We also may look to other statutes upon the same or similar subjects. *Harris v. County of Hennepin,* 679 N.W.2d 728, 732 (Minn. 2004); *see also State v. Lucas,* 589 N.W.2d 91, 94 (Minn.1999) ("The doctrine of *in pari materia* is a tool of statutory interpretation that allows two statutes with common purposes and subject matter to be construed together to determine the meaning of ambiguous statutory language."). To interpret "physical abuse," we therefore look first—as the court of appeals did—to other provisions of the same statute, interpreting "physical abuse" in light of them. *See Hince v. O'Keefe,* 632 N.W.2d 577, 582 (Minn.2001) (separate provisions within the same statute are to be interpreted in light of each other).

We note initially that Minn.Stat. § 260C.007, subd. 6(2), delineates two categories of children in need of protection or services: those who are themselves victims of physical abuse, sexual abuse, or emotional maltreatment (subdivision 6(2)(i) and (iv)); and those who are in need of protection or services only because they reside with victims of domestic child abuse or with perpetrators of domestic child abuse or child abuse (subdivision 6(2)(ii) and (iii)). The legislature provided specific definitions of "child abuse" and "domestic child abuse" in Minn.Stat. § 260C.007, subds. 5 and 13, and it is the definition of "child abuse" upon which the court of appeals relied in interpreting "physical abuse" in this case. 735 N.W.2d at 738. More particularly, the court of appeals held that (1) because malicious punishment of a child is "child abuse" under Minn.Stat. § 260C.007, subd. 6(2)(ii) and (iii), and (2) because malicious punishment of a child under Minn.Stat. § 609.377, subd. 1, requires "unreasonable force or cruel discipline that is excessive under the circumstances," then (3) "physical abuse" for purposes of Minn.Stat. § 260C.007, subd. 6(2)(i), likewise "requires unreasonable force or cruel discipline that is excessive under the circumstances." 735 N.W.2d at 738.

We agree that malicious punishment of a child constitutes physical abuse that renders the child in need of protection or services. The problem is the court of appeals' holding that physical abuse "*requires* unreasonable force or cruel discipline that is excessive under the circumstances." 735 N.W.2d at 738 (emphasis added). We conclude that to limit "physical abuse" under Minn.Stat. § 260C.007, subd. 6(2)(i), to conduct that constitutes the crime of malicious punishment of a child is error.

First, the legislature did not use "child abuse" to define children who are in need of protection or services because they have themselves been the victim of abuse or neglect. Rather, the legislature used the term "physical abuse." Minn.Stat. § 260C.007, subd. 6(2). We presume that distinctions in language in the same context are intentional, and we apply them consistent with that intent. *Transport Leasing Corp. v. State,* 294 Minn. 134, 137, 199 N.W.2d 817, 819 (1972). That the legislature did not use "child abuse"—limited as it is to specific enumerated crimes—in the context of children who have themselves been the victim of abuse or neglect indicates that the legislature intended to protect a broader range of such children. That is, the legislature intended to protect children who have been subjected to conduct constituting physical abuse, regardless of whether that conduct rises to the level of one of the criminal

statutes enumerated in the definition of "child abuse" under Minn.Stat. § 260C.007, subd. 5. A broad construction of the definition of children in need of protection or services, with respect to actual victims of abuse and maltreatment, is reasonable in light of the statute's express instruction that "[t]he paramount consideration in all proceedings concerning a child alleged or found to be in need of protection or services is the health, safety, and best interests of the child." Minn.Stat. § 260C.001, subd. 2 (2006).

The legislature uses "child abuse" only in the definition of children who are in need of protection or services because of their residence—either with a victim or with a perpetrator of "child abuse." Minn. Stat. § 260C.007, subd. 6(2)(ii), (iii). We view this as a limitation on the children who are to be adjudicated as in need of protection or services due solely to their residence, and not because they themselves have been the victim of abuse or neglect. Such a narrow construction of subdivision 6(2) is reasonable in light of the statute's express intent to remove a child from the custody of the parents "only when the child's welfare or safety cannot be adequately safeguarded without removal." Minn.Stat. § 260C.001, subd. 2.

Second, while we must strictly construe criminal statutes, resolving all reasonable doubt concerning the intent of the legislature in favor of the defendant, *State v. Koenig,* 666 N.W.2d 366, 372–73 (Minn.2003), remedial statutes are to be construed liberally, *State v. Indus. Tool & Die Works,* 220 Minn. 591, 604, 21 N.W.2d 31, 38 (1945). In equating "physical abuse" with the crime of malicious punishment of a child, the court of appeals necessarily adopted a strict construction of what constitutes physical abuse. A strict construction of what constitutes "physical abuse" that renders a child in need of

protection or services is contrary to the liberal construction that is to be given to remedial legislation like child protection laws.

Finally, "child abuse" as defined in Minn.Stat. § 260C.007, subd. 5, includes not just malicious punishment, but also such crimes as assault of the child (Minn. Stat. §§ 609.221, 609.222, 609.223, 609.224, 609.2242 (2006)), use of the child in prostitution (Minn.Stat. §§ 609.322, 609.324 (2006)), and criminal sexual conduct (Minn. Stat. §§ 609.342, 609.343, 609.344, 609.345 (2006)). The assault or rape of a child surely constitutes "physical abuse" that renders the child in need of protection or services, even if it does not constitute "unreasonable force or cruel discipline that is excessive under the circumstances."

We therefore conclude that the court of appeals erred in limiting the physical abuse that renders a child in need of protection and services to that which constitutes the crime of malicious punishment of a child under Minn.Stat. § 609.377.

In interpreting an ambiguous statutory provision, we consider not only the statute in which the ambiguous provision appears, but also other statutes that address the same subject. Minn.Stat. § 645.16. The county urges us to look to Minn.Stat. § 626.556 (2006), which requires the reporting of the maltreatment of minors, for guidance in the interpretation of "physical abuse" of a child. The stated purpose of chapter 260C is

to secure for each child alleged or adjudicated in need of protection or services and under the jurisdiction of the court, the care and guidance, preferably in the child's own home, as will best serve the spiritual, emotional, mental, and physical welfare of the child; to provide judicial procedures which protect the welfare of the child; to preserve and strengthen the child's family ties whenever possible

and in the child's best interests, removing the child from the custody of parents only when the child's welfare or safety cannot be adequately safeguarded without removal; and, when removal from the child's own family is necessary and in the child's best interests, to secure for the child custody, care and discipline as nearly as possible equivalent to that which should have been given by the parents.

Minn.Stat. § 260C.001, subd. 2. Similarly, Minn.Stat. § 626.556, subd. 1, declares it to be the public policy of the state "to protect children whose health or welfare may be jeopardized through physical abuse, neglect, or sexual abuse." In addition,

it is the policy of this state to require the reporting of neglect, physical or sexual abuse of children in the home, school, and community settings; to provide for the voluntary reporting of abuse or neglect of children; to require a family assessment, when appropriate, as the preferred response to reports not alleging substantial child endangerment; to require an investigation when the report alleges substantial child endangerment; and to provide protective, family support, and family preservation services when needed to appropriate cases.

*Id.* Section 626.556, therefore requires certain persons "who know[ ] or [have] reason to believe a child is being neglected or physically or sexually abused" to report that information to local authorities. Minn.Stat. § 626.556, subd. 3. To be sure, not every report of neglect or of physical or sexual abuse will result in an adjudication of the child as in need of protection or services. But it is reasonable to assume that the legislature intended there to be some symmetry between conduct that

must be reported to authorities, and the conduct that actually renders a child in need of protection or services. Therefore, we conclude that it is appropriate to look to section 626.556 for guidance in defining physical abuse under section 260C.007, subdivision 6(2)(i).

Section 626.556 defines "physical abuse" for purposes of the reporting requirement as follows:

"Physical abuse" means any physical injury, mental injury, or threatened injury, inflicted by a person responsible for the child's care on a child other than by accidental means, or any physical or mental injury that cannot reasonably be explained by the child's history of injuries, or any aversive or deprivation procedures, or regulated interventions, that have not been authorized under section 121A.67 or 245.825.

Minn.Stat. § 626.556, subd. 2(g). Section 626.556 does not define "physical injury," but it does provide this definition of "mental injury":

"Mental injury" means an injury to the psychological capacity or emotional stability of a child as evidenced by an observable or substantial impairment in the child's ability to function within a normal range of performance and behavior with due regard to the child's culture.

Minn.Stat. § 626.556, subd. 2(m).

Because the definition of "physical abuse" under the reporting statute, Minn. Stat. § 626.556, subd. 2(g), expressly includes "mental injury," section 626.556 requires the reporting of the infliction of mental, as well as physical, injuries upon a child. Physical abuse may result in significant mental injury, even if it results in no observable physical injury.[3] It would be

---

3. The provision in section 260C.007, subdivision 6(2)(iv), making a victim of "emotional

incongruous for the legislature to require the reporting of mental injuries inflicted upon a child, yet leave the courts without jurisdiction to provide protection to such an injured child or to require that services be provided to the child's family. At the same time, the legislature's definition of "mental injury" under the reporting statute appropriately narrows the range of adverse mental effects that qualify as mental injury for these purposes: the injury must be "evidenced by an observable or substantial impairment in the child's ability to function within a normal range of performance and behavior." Minn.Stat. § 626.556, subd. 2(m). We therefore conclude that the court of appeals erred in excluding physical abuse that results in mental injury from conduct that renders a child in need of protection or services under Minn.Stat. § 260C.007, subd. 6(2)(i).

[8] Based on the foregoing analysis, we conclude that physical abuse that causes only mental injury may nevertheless qualify as physical abuse for purposes of the definition of a child in need of protection or services under Minn.Stat. § 260C.007, subd. 6(2)(i). A child is therefore in need of protection or services under section 260C.007 if there is physical conduct toward the child that causes either physical injury, or mental injury as defined in Minn.Stat. § 626.556, subd. 2(m).

## II.

■ We next apply this definition to the stipulated facts of this case. As to whether there was physical injury to G.F., the county concedes the record is unclear. The guardian ad litem urges us to find that the infliction of physical pain, even without specific injury, should be sufficient, and argues that we can infer that paddling a child 36 times inflicts pain. We are unwilling to establish a bright-line rule that the infliction of any pain constitutes either physical injury or physical abuse, because to do so would effectively prohibit all corporal punishment of children by their parents. Because the definition of "physical abuse" under the reporting statute, Minn. Stat. § 626.556, subd. 2(g), and the definition of "emotional maltreatment" under the CHIPS statute, Minn.Stat. § 260C.007, subd. 15, both explicitly exclude "reasonable discipline," it is clear to us that the legislature did not intend to ban corporal punishment.[4] Moreover, even if pain alone could be a basis on which to conclude that physical abuse has occurred, the bare-

maltreatment" a child in need of protection or services is not inconsistent with the inclusion of mental injury within the scope of physical abuse. Section 260C.007 defines "emotional maltreatment" as "the consistent, deliberate infliction of mental harm on a child by a person responsible for the child's care, that has an observable, sustained, and adverse effect on the child's physical, mental or emotional development." Minn.Stat. § 260C.007, subd. 15. Further, emotional maltreatment requires the *"consistent, deliberate* infliction of mental harm," *id.* (emphasis added), whereas "physical abuse" involves any *nonaccidental* injury inflicted on a child, Minn.Stat. § 626.556, subd. 2(g). Accordingly, the emotional maltreatment provision in Minn.Stat. § 260C.007, subd. 6(2)(iv), does not always cover a mental injury caused by physical abuse.

4. In their brief, respondents suggest that appellants' underlying purpose in these proceedings is to challenge the right of parents to use corporal punishment. Appellants deny such a purpose. That issue, however, is not before us. Nor should our decision be seen as either condoning or condemning the use of corporal punishment. By excepting "reasonable and moderate physical discipline" from the definition of "physical abuse" in section 626.556, the legislature has made a policy decision to permit corporal punishment. Whether we agree or disagree with that policy decision is of no importance. Our role is limited to interpreting the law as the legislature has enacted it.

bones stipulation of facts that forms this record is an inadequate basis on which to reach such a conclusion here.

As to whether there was mental injury comprising physical abuse for purposes of Minn.Stat. § 260C.007, subd. 6(2)(i), the question is whether the stipulated facts establish by clear and convincing evidence "an injury to the psychological capacity or emotional stability of [G.F.] as evidenced by an observable or substantial impairment in [his] ability to function within a normal range of performance and behavior." Minn.Stat. § 626.556, subd. 2(m). G.F.'s use of the knife to make a suicide threat suggests the paddling may have had some effect on G.F.'s psychological or emotional stability. Clearly, wielding the knife in conjunction with the suicide threat raises serious concerns that must be addressed. But for there to be a mental injury and thus physical abuse there must be more. There must be a showing that the injury resulted in an "impairment in [G.F.'s] ability to function within a normal range of performance and behavior." The bare-bones record here does not support a conclusion that there was such an impairment. The record is simply silent on G.F.'s ongoing ability to function within a normal range of performance and behavior. Given this silence, we are not in a position to hold, based solely on the suicide threat involving the knife, that G.F. is in need of protection or services.

█ Because of the inadequacies of the factual record before us, we could remand the matter to the district court for further development of the record. We decline to do so, for several reasons. First, the County had the opportunity to make a more complete factual record at the time,

but was apparently satisfied with the facts as stipulated. Second, almost three years have passed since the incident at issue, during most of which time the children have been living at home without apparent further incident. A second determination now as to whether the children were in need of protection or services three years ago seems a needless use of judicial resources under those circumstances.

We therefore conclude that the stipulated record does not provide sufficient information on which to conclude that either mental or physical injury has been proven by clear and convincing evidence, and that remand to allow supplementation of the record is not in the interests of justice.[5]

### III.

The district court also concluded that G.F. and his brother were in need of protection or services under Minn.Stat. § 260C.007, subd. 6(9), because their "behavior, condition, or environment is such as to be injurious or dangerous to the child or others." However, the district court's conclusion in this regard appears to rest on the same findings as its conclusion that G.F. was in need of protection or services as a victim of physical abuse. There are no other findings with respect to the boys' "behavior, condition, or environment." Because we hold that the stipulated record does not provide sufficient information on which to conclude that either mental or physical injury has been proven by clear and convincing evidence, we similarly reverse the district court's conclusion that the boys' "behavior, condition, or environment is such as to be injurious or dangerous" under Minn.Stat. § 260C.007, subd.

---

5. Having concluded that the record is inadequate to establish either the physical or mental injury necessary to a finding of physical abuse under Minn.Stat. § 260C.007, subd.

6(2)(i), we need not examine whether the exception for reasonable and moderate discipline in the definition of physical abuse under section 626.556, subdivision 2(g), applies.

6(9). Therefore, we affirm as modified the court of appeals' decision reversing the district court's adjudication of G.F. and C.F. as children in need of protection or services.

Affirmed in part, reversed in part.

DIETZEN, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.