*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0596**

State of Minnesota,
Respondent,

vs.

Sabrina Beth O'Brien,
Appellant.

**Filed February 1, 2016
Affirmed
Schellhas, Judge**

Stearns County District Court
File No. 73-CR-14-8194

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, Kyle R. Triggs, Assistant County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Reilly, Presiding Judge; Schellhas, Judge; and

Rodenberg, Judge.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges her convictions of gross-misdemeanor malicious punishment of a child and misdemeanor domestic assault-harm, arguing that the evidence was insufficient to support the convictions. We affirm.

**FACTS**

Appellant Sabrina O'Brien's seven-year-old son, T.R., exhibited behavior problems at his school on September 23, 2014. A school paraprofessional testified that T.R. was becoming very physical with her and that she had to remove him from the classroom and from other children in the vicinity. The following morning when the paraprofessional met T.R. at the bus, she immediately noticed that T.R. had some markings on his neck; the paraprofessional described the markings as "purple in color, almost like lines on [T.R.'s] neck," and testified that the markings "looked like a hand print, fingerprints." The paraprofessional asked T.R. what had happened, and T.R. said that O'Brien was "tickling" him. The paraprofessional had not seen the markings on T.R. the prior day and escorted T.R. to the school nurse to look at the markings. The nurse alerted the school social worker, who observed the markings, along with scratches on T.R.'s ear and chest. The social worker testified that the markings were "pretty apparent and obvious." The social worker contacted Stearns County Social Services and the school's resource officer. The resource officer observed the markings on T.R., photographed them, and, later that day, obtained O'Brien's recorded statement. O'Brien admitted that the injuries depicted in one of the photographs were from "tickling" T.R.

2

Respondent State of Minnesota charged O'Brien with gross-misdemeanor malicious punishment of a child and misdemeanor domestic assault-harm. A jury returned guilty verdicts on both charges, and the district court imposed a stayed sentence for malicious punishment of a child.

This appeal follows.

## DECISION

O'Brien argues that the evidence was insufficient to support her convictions of malicious punishment of a child and domestic assault-harm. The state concedes that, because its proof was "partially based on circumstantial evidence," the circumstantial-evidence standard applies. Under the circumstantial-evidence standard, the reviewing court applies a two-step test. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). "The first step is to identify the circumstances proved. In identifying the circumstances proved, [appellate courts] defer to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State." *Id.* at 598–99 (quotations and citation omitted). "[B]ecause the jury is in the best position to evaluate the credibility of the evidence even in cases based on circumstantial evidence," the reviewing court must "construe conflicting evidence in the light most favorable to the verdict and assume that the jury believed the State's witnesses and disbelieved the defense witnesses." *Id.* at 599 (quotation omitted). The second step of the circumstantial-evidence standard is to "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotations omitted).

*Malicious punishment*

"A parent . . . who, by an intentional act or a series of intentional acts with respect to a child, evidences unreasonable force or cruel discipline that is excessive under the circumstances is guilty of malicious punishment of a child . . . ." Minn. Stat. § 609.377, subd. 1 (2014). Malicious punishment of a child is a general-intent crime because it requires only that "the defendant intended to do the physical act" and not "that the defendant meant to violate the law or cause a particular result." *Cf. State v. Fleck*, 810 N.W.2d 303, 309–10 (Minn. 2012) (concluding that assault-harm is general-intent crime because "[a]lthough the definition of assault-harm requires the State to prove that the defendant intended to do the physical act, nothing in the definition requires proof that the defendant meant to violate the law or cause a particular result").

O'Brien argues that her actions did not satisfy the statutory requirements of unreasonable force or cruel discipline because she "did not exceed any normal limits when she tried to cheer up her son by engaging in an activity he enjoyed—tickling." The state counters that the circumstances proved are that O'Brien caused T.R.'s injuries and do not allow for a rational inference that she did so accidentally by playfully tickling T.R. The state argues that the only rational inference from the circumstances proved is that O'Brien intentionally assaulted T.R. because of his misbehavior.

When a sufficiency-of-the-evidence argument involves the question of whether the defendant's conduct meets the statutory definition of an offense, the reviewing court is presented with a question of statutory interpretation that is reviewed de novo. *See State v. Hayes*, 826 N.W.2d 799, 803 (Minn. 2013) (stating in context of sufficiency-of-the-

4

evidence claim that whether defendant's conduct satisfied statutory definition of crime "presents a question of statutory interpretation that [appellate courts] review de novo"). "'Unreasonable force' or 'cruel discipline' should be read as alternatives." *State v. Broten*, 836 N.W.2d 573, 577 (Minn. App. 2013), *review denied* (Minn. Nov. 12, 2013). The statute does not define the terms "cruel" or "excessive." We have stated that "'[c]ruel' is defined as '[c]ausing or characterized by severe pain, suffering, or distress.'" *Id.* at 575 (second alteration in original) (quoting *The American Heritage Dictionary* 437 (5th ed. 2011)). "[E]xcessive" is defined as "[e]xceeding a normal, usual, reasonable, or proper limit." *The American Heritage Dictionary* 618 (5th ed. 2011). When determining the scope of reasonable disciplinary force, we have considered "the child's age, height, and weight; the seriousness of the [child's] infraction; the degree of force used by the parent; and the physical impact of the discipline." *In re Welfare of Children of N.F.*, 735 N.W.2d 735, 738–39 (Minn. App. 2007), *aff'd in part, rev'd in part on other grounds*, 749 N.W.2d 802 (Minn. 2008).

The first step of the circumstantial-evidence standard is to "identify the circumstances proved." *Silvernail*, 831 N.W.2d at 598. In determining the circumstances proved, the reviewing court must "construe conflicting evidence in the light most favorable to the verdict and assume that the jury believed the State's witnesses and disbelieved the defense witnesses." *Id.* at 599 (quotation omitted).

Here, the circumstances proved are as follows. The paraprofessional notified the school social worker about T.R.'s behavior on the day in question and did not observe any injuries on T.R. when she escorted him to the bus. When T.R. arrived home, O'Brien

5

grounded him for being "bad at school." T.R. threw a tantrum for about 15 minutes while following O'Brien as she cleaned the house. At the time, T.R.'s 12-year-old brother, D.O., was in the living room approximately 15 feet from O'Brien and T.R. and could not see what was happening but knew that T.R. was having a temper tantrum and crying and yelling. T.R. and O'Brien went into the family's shared bedroom, where T.R.'s 14-year-old sister, A.O., was on top of a bunk bed. T.R. sat on O'Brien's lap on a bed on the other side of the room while O'Brien "tickled" T.R. on his neck and under his arms for about 30 minutes. O'Brien stopped "tickling" T.R. when she noticed some scratches on his neck. O'Brien knew that T.R.'s injuries resulted from her "tickling." T.R.'s injuries were "purple in color, almost like lines on his neck" and "looked like a hand print, fingerprints." The "fingerprint marks on [T.R.'s] neck" were "pretty apparent and obvious." T.R. "had multiple scratches on his neck, some were deep red and some were lighter red." The injuries "looked much worse" when the resource officer saw them in person than when she photographed them.

The second step of the circumstantial-evidence standard is to "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Silvernail*, 831 N.W.2d at 599 (quotations omitted). "[Appellate courts] review the circumstantial evidence not as isolated facts, but as a whole," and "examine independently the reasonableness of all inferences that might be drawn from the circumstances proved; including the inferences consistent with a hypothesis other than guilt." *Id.* (quotations omitted). "[Appellate courts] give no deference to the fact finder's choice between reasonable inferences." *Id.* (quotation omitted).

In *State v. Hokanson*, the supreme court considered whether the evidence was sufficient to support a conviction of first-degree murder while committing child abuse (malicious punishment of a child) with a past pattern of child abuse. 821 N.W.2d 340, 348, 353 (Minn. 2012). The court determined the following to be the circumstances proved for the malicious-punishment offenses:

> [The child] sustained bruising on his face around 10 and 12 months of age. The facial bruising showed a pattern consistent with fingertips. [The child] did not have any blood disorder or other medical problem that would have caused him to bruise easily. [The child's mother] witnessed bruises on [the child]'s face, observed appellant putting his hand over [the child]'s mouth, and saw appellant squeeze [the child] around the rib cage. [The child] was afraid of appellant and would try to move away from him. Appellant admitted to putting his hands over [the child]'s mouth when he was crying, and would hold [the child]'s face down into the bed when [the child] was screaming for his mother. Appellant also admitted to squeezing [the child]'s torso with his hands to get him to stop crying. Additionally, the individuals who had contact with [the child] at the time in question testified that they never abused [the child], and we must assume that the jury believed their testimony.

*Id.* at 355. Based on these circumstances, the court determined that "a reasonable jury could have concluded that appellant's actions involved unreasonable force or cruel discipline that is excessive under the circumstances, and therefore constituted a violation of the malicious punishment statute." *Id.* at 355–56 (quotation omitted). The court also concluded that the circumstances proved did not support a rational hypothesis of innocence because it was required to assume that the jury believed the testimony of the state's witnesses that no one other than the appellant had abused the child and because, "if the jury believed the medical examiner's testimony that [the child] did not bruise easily, the jury could not have

7

reasonably concluded that appellant used reasonable force when he covered [the infant]'s mouth and held [the infant] down on the bed." *Id.* at 356.

Although the seriousness of the injuries in this case do not approach the injuries sustained by the child in *Hokanson*, the circumstances proved are consistent with O'Brien's guilt. The circumstances are inconsistent with any rational hypothesis except that of guilt. O'Brien admitted that she caused T.R.'s injuries by "tickling" him. The state presented testimonial and photographic evidence regarding the extent of T.R.'s injuries resulting from the "tickling." T.R. had "multiple scratches on his neck" that were "purple" or "deep red" in color and had the appearance of "a hand print" or "fingerprint marks." The injuries "looked much worse" when the resource officer saw them in person than when she photographed them. Assuming, as we must, that the jury believed the state's evidence, the jury could not have reasonably concluded that O'Brien used reasonable force when "tickling" T.R. We therefore conclude that the evidence was sufficient to support O'Brien's conviction of malicious punishment of a child.

*Domestic assault-harm*

O'Brien argues that the evidence was insufficient to support her conviction of domestic assault-harm because the state offered no evidence that she intended to inflict bodily harm upon T.R. A person who "intentionally inflicts or attempts to inflict bodily harm" on a family member "commits an assault and is guilty of a misdemeanor." Minn. Stat. § 609.2242, subd. 1 (2014). "[A]ssault-harm is a general-intent crime . . . ." *Fleck*, 810 N.W.2d at 309. "Although the definition of assault-harm requires the State to prove

8

that the defendant intended to do the physical act, nothing in the definition requires proof that the defendant meant to violate the law or cause a particular result." *Id.*

The first step of the circumstantial-evidence standard is to "identify the circumstances proved." *Silvernail*, 831 N.W.2d at 598. The circumstances proved are the same here as set forth above. The second step of the circumstantial-evidence standard requires us to "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Silvernail*, 831 N.W.2d at 599 (quotations omitted). Despite acknowledging that domestic assault-harm is a general-intent crime, O'Brien asserts that "to be guilty of domestic assault, [she] must have intended to engage in the conduct forbidden by the statute—inflicting bodily harm upon a family member." She further argues that "[t]he unrefuted evidence proved that [her] intent was to play with T.R., not to cause him any harm," and that "[b]ecause a rational hypothesis of innocence remained, the evidence was insufficient to show beyond a reasonable doubt that [she] intended to assault T.R." We disagree.

Because domestic assault-harm is a general-intent crime, the state only needed to prove that O'Brien intentionally tickled T.R., which resulted in bodily harm to T.R.; the state did not need to prove that O'Brien intended to inflict bodily harm on T.R. T.R., D.O., and A.O. testified that O'Brien tickled T.R., and O'Brien admitted in her statement to the resource officer that she caused T.R.'s injuries by tickling him. These circumstances are consistent with O'Brien causing bodily harm to T.R. by intentional conduct and are inconsistent with any rational hypothesis of O'Brien's innocence. We therefore conclude that the evidence was sufficient to support O'Brien's conviction of domestic assault-harm.

9

**Affirmed.**