**STATE of Minnesota, Respondent,**

v.

**Robert Michael LINDAHL, Appellant.**

**No. 51481.**

Supreme Court of Minnesota.

Aug. 28, 1981.

Collins, Buckley, Sauntry & Haugh, Theodore J. Collins and Thomas J. Germscheid, St. Paul, for appellant.

Warren Spannaus, Atty. Gen., Gary Hansen and Norman B. Coleman, Jr., Sp. Asst. Attys. Gen., St. Paul, John Leitner, County Atty., Aitkin, for respondent.

C. Paul Jones, Public Defender, and Elizabeth B. Davies, Asst. Public Defender, Minneapolis, amicus curiae.

AMDAHL, Justice.

Defendant was found guilty by a district court jury of a charge of criminal sexual conduct in the first degree (nonconsensual penetration accomplished by force or coercion where actor causes personal injury to complainant), Minn.Stat. § 609.342(e)(i) (1978). The trial court sentenced defendant to a maximum term of 20 years in prison. On this appeal from judgment of conviction, defendant contends that his conviction should be reversed outright on the ground that the evidence of his guilt was legally insufficient or that he should be given a new trial on the grounds that the trial court erred in admitting eyewitness identification testimony and *Spreigl* evidence, erred in refusing to instruct the jury that defendant's intoxication could be considered in determining defendant's guilt of the charged crime, and improperly coerced a verdict. We affirm.

Complainant, an 18-year-old Crystal woman, accompanied her parents and other relatives to Aitkin on Saturday, July 7, 1979, to spend the weekend at an aunt's cottage. That evening she attended a beer party at a residence south of Aitkin on Highway 169. Several hours after midnight she met a young man, later identified as defendant, who eventually invited her to walk with him down a nearby dirt or gravel road. It was during this walk that the man, without warning, hit her, then pushed her down and, after forcing her to commit fellatio, forced her to have sexual intercourse with him. After completing the act, the man tied her to a barbed wire fence and left. Complainant then freed herself, and after walking a distance sought and obtained help.

Coincidentally, police, who were called to the party at 4:30 a. m. to investigate an unrelated matter, had copied down the license numbers of two cars. As part of their investigation of the rape, the police learned that one of these two cars was registered to defendant's girl friend in Brooklyn Park, who had loaned defendant the car. The officers traced defendant to the family lake cabin south of Aitkin where they talked with him, his father, and his friend, Mike Peterson. Defendant fit the description given by complainant of her assailant in a number of ways, the most sig-

nificant being that defendant had long hair with a part down the middle and wore a silver necklace.

At the sheriff's office defendant said he had been so drunk that he did not know what happened. He claimed he and Mike each had about 30 beers. He said that he had also taken marijuana and possibly angel dust. Asked what he did for a living, defendant said he "used to be a carpenter or a carpet layer."

Mike Peterson, defendant's friend, testified for the state that he had drunk about 10 beers, not 30, and that when defendant was with him defendant did not outdrink him. He also testified that he had seen defendant walking away from the party with a girl who "somewhat" resembled complainant and that later he saw defendant returning by himself. Defendant told him that he had been out "four wheeling" in a cream-colored Ford. Peterson testified that defendant did not seem intoxicated to him and drove "straight as an arrow" back to the cottage.

There was evidence that there was only one cream-colored four-wheel drive vehicle at the party and that defendant did not go "four wheeling" in this vehicle.

Complainant identified defendant from pictures and then later in a confirmatory lineup. She also identified defendant at trial.

Semen left by complainant's assailant was that of a type O secretor; complainant and defendant both have type O blood but defendant, not complainant, is a secretor. Thus, the medical evidence could not rule out defendant as a source of the semen.

*Spreigl* evidence admitted to bolster the identification evidence revealed that early on December 24, 1978, when taking a 15-year-old Brooklyn Park girl home after an evening of group beer drinking, defendant stopped his car, hit her, forced her to remove her clothes, then forced her to commit fellatio and to submit to sexual intercourse. In other words, defendant used the same basic *modus operandi* on her as he did on complainant.

Defendant did not testify apparently because the trial court refused an advance defense request to instruct the jury that it could consider defendant's intoxication in determining defendant's guilt of the charged crime. The trial court did instruct the jury that it could consider intoxication in determining defendant's guilt of the lesser offense of simple assault. The court also submitted criminal sexual conduct in the third degree.

1. Most of the issues raised by defendant do not require detailed discussion.

■ (a) The evidence on identification was sufficient, consisting as it did of positive eyewitness identification testimony by the victim and strong corroborating evidence including (i) evidence that defendant fit the description, (ii) evidence that defendant's car was still at the scene of the party at the time of the rape, (iii) evidence that defendant's friend saw him walk off with a girl and return alone, (iv) the medical evidence that defendant is a type O secretor, and (v) the *Spreigl* evidence which showed that defendant had used the same basic *modus operandi* (assault followed by fellatio followed by intercourse) in raping another girl several months earlier.

■ (b) Defendant's contention concerning the admissibility of the in-court eyewitness identification testimony by complainant is based on the fact that (i) the photographic display contained two pictures of defendant and two of another person but one each of the rest and (ii) the fact that only defendant among the participants did not laugh when repeating the required words at the confirmatory lineup. Although we agree that the photographic display was suggestive, our analysis of all the relevant factors convinces us that this suggestiveness did not create a "very substantial likelihood of irreparable misidentification." *See Manson v. Brathwaite*, 432 U.S. 98, 107, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). Complainant was with her assailant for over 45 minutes and had an adequate opportunity

to see him. Her description of the assailant fit defendant in a number of key respects. She had no trouble identifying defendant and her initial identification of defendant was made shortly after the offense. She never wavered in her identification of defendant. In short, we believe the identification was reliable.

■ (c) Similarly, we are satisfied that the trial court properly admitted the *Spreigl* evidence. Defendant's contentions concerning this evidence are (i) that the trial court improperly restricted his right to cross-examine the victim of the *Spreigl* offense at the hearing to determine admissibility, and (ii) that the evidence of defendant's participation in the offense was unclear and unconvincing because the victim's identification of defendant was tainted by the manner in which the identification issue was handled during the admissibility hearing. We are not prepared to establish any requirement that the state call the *Spreigl* witnesses to testify at the hearing to determine the admissibility of the *Spreigl* evidence. The trial court has broad discretion in determining whether or not to require this in a particular case and defendant is always free to challenge the exercise of that discretion on post-trial appeal. In this case, instead of using the simple offer-of-proof procedure, the trial court allowed the prosecutor to have the victim give a shortened testimonial summary of what happened. While the court did not allow defense counsel to cross-examine her on all of this testimony, it did allow him to cross-examine her on the issue of identification, which was the key point in determining whether the evidence of defendant's participation in the *Spreigl* offense was clear and convincing. Thus, on the key issue, defense counsel was permitted to cross-examine the victim at the hearing. Further, it is clear from the cross-examination of the victim at trial that more extensive cross-examination of her at the admissibility hearing would not have given the trial court reason to rule differently. The victim's identification of defendant was not, as defendant contends, weak. On the contrary, she positively identified defendant and testified that she had

been with him for five to six hours, that she had had a good opportunity to observe him, and, significantly, that he had identified himself to her as Michael Lindahl.

■ (d) Finally, we do not consider defendant's contention that the trial court coerced a verdict by the way in which the court instructed the jury on the matter of nighttime deliberations. Defense counsel specifically told the court he did not object to the instruction. Accordingly, defendant must be deemed to have forfeited his right to have the matter considered on appeal.

■■ 2. Having disposed of all the other issues, we now address the most difficult issue raised by the appeal, whether the trial court prejudicially erred in refusing to instruct the jury that defendant's intoxication (if he was intoxicated) could be considered in determining defendant's guilt of the charged offense.

Minn.Stat. § 609.075 (1978) provides:

An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind.

In determining whether the jury should be instructed on voluntary intoxication, the trial court must analyze whether the crime charged has a specific intent or purpose as an essential element. The crime is a general-intent crime if the only intent required is to do the act which is prohibited by the statute. Thus, escape is a general-intent crime because the only intent required is the intent to depart from custody and no intent to do some further act or achieve some additional consequence is required. *State v. Kjeldahl*, 278 N.W.2d 58, 61 (Minn. 1979). If the crime charged has a specific intent as an element and if intoxication is offered by the defendant as an explanation for his actions, then the court must give an instruction on intoxication.

■ Defendant seemingly admits that rape generally has been viewed as a general-intent offense (although the cases on this are not unanimous), but argues that the statute under which he was charged did have one element, namely force, for which a specific intent was required. Section 609.-342(e)(i) provides, in relevant part, that a person is guilty of criminal sexual conduct in the first degree if he causes personal injury to the victim and uses force or coercion to accomplish sexual penetration of the victim. Defendant points to the fact that section 609.341, subdivision 3, as it then read, defined "force" as meaning "commission or threat by the actor of an assault, as defined in section 609.22, or commission or threat of any other crime by the actor against the complainant or another, which causes the complainant to reasonably believe that the actor has the present ability to execute the threat, and also causes the complainant to submit." Defendant then points to the fact that section 609.22 defined assault as "intentionally inflicting or attempting to inflict bodily harm upon another" or doing an act "with intent to cause fear in another of immediate bodily harm or death."

The definition of "force" was subsequently revised at the same time assault was divided into four degrees, so that now "force" is "infliction, attempted infliction, or threatened infliction by the actor of bodily harm or commission or threat of any other crime by the actor against the complainant or another, which causes the complainant to reasonably believe that the actor has the present ability to execute the threat, and also causes the complainant to submit." Defendant admits that it is harder to make a case now for the position that the offense in question is a specific-intent offense, but he argues that at the time he committed the crime it was a specific-intent offense.

In Minnesota, as in most jurisdictions, the separate crime of assault with intent to rape was held to be a specific-intent crime because the intent element was an abstract mental element additional to the physical act proscribed. *State v. Johnson*, 243 Minn.

296, 67 N.W.2d 639 (1954). However, an assault involving infliction of injury of some sort requires no abstract intent to do something further, only an intent to do the prohibited physical act of committing a battery. In our case it was clear that the assault that accompanied the penetration took the form of actual infliction of bodily harm as opposed to the more abstract form of assault involving intent to create fear of harm. All that was required to prove this kind of assault was to show that the blows to complainant were not accidental but were intentionally inflicted. The evidence that this was the case was overwhelming. It is also clear that defendant did not use the assault to cause fear in complainant which would lead to her submission because he continued to use the direct approach of simply physically overpowering complainant.

In summary, we do not decide the broader issue of whether in some prosecutions under Minn.Stat. § 609.342(e)(i) (1978) an intoxication instruction might be appropriate because in this case we are satisfied that, because of the nature of the assault involved, such an instruction was not required and its absence was not prejudicial.

Affirmed.