**STATE of Minnesota, Respondent,**

v.

**Larry Lew FORTMAN, Appellant.**

No. C4–90–2576.

Court of Appeals of Minnesota.

Aug. 27, 1991.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., St. Paul, James T. Reuter, Chisago County Atty., Center City, for respondent.

John M. Stuart, State Public Defender, Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by WOZNIAK, C.J., and AMUNDSON and SCHULTZ*, JJ.

## OPINION

WOZNIAK, Chief Judge.

Appellant Larry Lew Fortman challenges his convictions for second degree assault and terroristic threats in violation of Minn. Stat. §§ 609.222 and 609.713, subd. 1 (1990) respectively. Fortman claims the trial court erred by refusing to give a voluntary intoxication instruction for the second degree assault charge and improperly imposed consecutive sentences. We affirm in part, vacate in part and remand.

## FACTS

This case arose from a series of incidents on Thanksgiving day, November 23, 1989, in Lindstrom, Minnesota. On that day, Joan Chandler had dinner with her mother and two adult sons, Christopher and Michael. Joan Chandler invited Fortman, her boyfriend at the time, but he declined. Fortman testified he spent the afternoon drinking heavily.

Fortman arrived at the Chandler residence shortly after dinner. He and Michael Chandler soon began a conversation which led to a heated argument.

Michael eventually told Fortman to leave, but Fortman refused. Ms. Chandler then asked Michael to leave, but he refused. Michael went into the kitchen and talked with his mother about Fortman. Michael sat at the kitchen table with his back to Fortman.

While Michael talked with his mother, Fortman picked up a set of ten-fifteen pound dumbbells. Fortman began pumping the dumbbells and pacing the room. According to Christopher Chandler, Fortman said something like "Something is going to happen, boy * * *. You better shut up."

A short time later, Fortman entered the kitchen and struck Michael Chandler several times on the head with the dumbbell. Michael testified that his prosthetic left eye prevented him from detecting Fortman's attack.

Christopher heard his mother's screams, ran into the kitchen, and pulled Fortman away. Fortman dropped the dumbbells and left the house. Michael went to the hospital and received stitches for his head wound.

Fortman returned to his motel room, had another drink, and drove to a nearby farm. Christopher telephoned Fortman at the farm. Fortman warned Christopher to stay away from Michael. Fortman claimed he had arranged for some friends to either kill or seriously injure Michael.

Chisago County Sheriff's deputies located Fortman at the farm at approximately 5:30–6:00 p.m. Deputy Lally testified that

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 2.

Fortman appeared to have been drinking, but did not seem impaired.

At the jail, Fortman told officers he and Michael argued and Michael pushed him too far. He claimed Michael had been "in his face" and Fortman merely did what he was trained to do in Vietnam. Fortman expressed regret that Michael had not been more seriously injured and told officers he needed to call off arrangements with friends to "take care" of Michael.

At trial, Joan Chandler testified for Fortman. Ms. Chandler testified that Fortman struck Michael several times with the dumbbells, but that in her opinion, Fortman had been drinking that day. Fortman testified that he could not remember striking Michael.

At the conclusion of the evidence, Fortman requested a voluntary intoxication instruction. The court gave the instruction with respect to the terroristic threats charge, but refused to give the instruction for the second degree assault charge.

The jury returned guilty verdicts for both charges. The trial court sentenced Fortman to a 15–month executed sentence for the second degree assault, a downward durational departure from the presumptive 21–month sentence. The court also imposed a consecutive 15–month sentence and stayed execution for five years on the terroristic threat conviction.

### ISSUES

1. Did the trial court abuse its discretion in refusing to give a voluntary intoxication instruction for a second degree assault charge?

2. Did the trial court erroneously impose a consecutive sentence for the terroristic threats conviction?

### ANALYSIS

Standard of Review

■ Refusal to give a requested jury instruction is within the trial court's discretion. *State v. Daniels*, 361 N.W.2d 819, 831 (Minn.1985). The trial court need not give an instruction which is unwarranted by the facts or relevant law. *See State v. Ruud*, 259 N.W.2d 567, 578 (1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978).

1. Voluntary Intoxication

■ The Minnesota Supreme Court has adopted the general rule that voluntary intoxication is a defense to a criminal charge " * * * only if a specific intent or purpose is an essential element of the crime charged * * *." *City of Minneapolis v. Altimus*, 306 Minn. 462, 466, 238 N.W.2d 851, 854–55 (1976). The proper analysis therefore focuses on:

> whether the crime charged has a specific intent or purpose as an essential element. The crime is a general-intent crime if the only intent required is to do the act which is prohibited by the statute. * * * If the crime charged has a specific intent as an element and if intoxication is offered by the defendant as an explanation for his actions, then the court must give an instruction on intoxication.

*State v. Lindahl*, 309 N.W.2d 763, 766 (Minn.1981) (citations omitted).

Fortman argues the trial court erred by refusing to give the requested voluntary intoxication instruction, contending that second degree assault is a specific intent crime. The court denied the request and held that second degree assault constituted a general-intent crime. We agree with the trial court and affirm.

Minn.Stat. § 609.075 (1990) creates the framework for voluntary intoxication as a criminal defense.

> An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of the intoxication may be taken into consideration in determining such intent or state of mind.

Minn.Stat. § 609.075; *see also* Minn.Crim. JIG 7.03.

Minnesota case law has never required a voluntary intoxication instruction in assault cases. In *State v. Mickens,* the supreme court discussed the voluntary intoxication

issue in light of specific and general intent crimes. 276 Minn. 343, 150 N.W.2d 30, 32 (1967). In dicta, the court noted:

> While it may well be arguable that "a particular intent" is a "necessary element" of the crime charged [i.e., assault with a deadly weapon] so as to require a consideration of intoxication as a possible defense, we need not decide the question because defendant's statements convincingly demonstrate that his acts were intentional and purposeful * * *.

*Id.* at 345–46, 150 N.W.2d at 32. Some time later, the court discussed the issue again, but refrained from explicitly answering the question:

> [w]e do not decide whether in assault cases the trial court is required to admit evidence of defendant's intoxication or, if so, whether the factfinder is required to consider such evidence on the issue of intent.

*State v. Olson,* 298 Minn. 551, 552, 214 N.W.2d 777, 778 (footnote omitted).

The supreme court most recently addressed the voluntary intoxication defense within an assault context in *Lindahl,* 309 N.W.2d 763. *Lindahl* reasoned that an assault involving an infliction of injury is a general intent crime because it does not require an "abstract intent to do something further," but only requires "an intent to do the prohibited physical act of committing a battery." *Id.* at 767. The court found that an assault involving bodily harm merely requires proof that the blows were not accidental, but were intentionally inflicted. *Id.* The court concluded:

> In summary, we do not decide the broader issue of whether in some prosecutions under Minn.Stat. § 609.342(e)(i) (1978) [first degree criminal sexual conduct][1] an intoxication instruction might be appropriate because in this case we are satisfied that, because the nature of the

assault involved [i.e., involving actual infliction of harm], such an instruction was not required and its absence was not prejudicial.

*Id.*

We are persuaded that *Lindahl's* analysis is applicable in this case. As in *Lindahl,* this case involves an assault resulting in the infliction of actual bodily injury rather than the more abstract assault based merely upon an intent to cause fear of immediate bodily harm or death. Therefore, the assault in this case did not require any specific intent beyond a general intent to do the prohibited physical act of committing a battery. We conclude that the trial court did not abuse its discretion in refusing to give a voluntary intoxication instruction.

### 2. Consecutive Sentence

Fortman challenges the trial court's imposition of a consecutive sentence for the terroristic threats conviction. Fortman contends the court erroneously departed without any explanation. He argues the consecutive probationary sentence should be modified to run concurrently with the second degree assault case. *See State v. Notch,* 446 N.W.2d 383, 386 (Minn.1989).

■ The state concedes that consecutive sentences involving the same victim with multiple offenses constituted a departure. However, the state argues the court gave sufficient reasons to uphold the departure and asks this court to examine the record for sufficient evidence to support the departure. *See Williams v. State,* 361 N.W.2d 840, 844 (Minn.1985).

The record suggests the trial court thought the consecutive sentence was not a departure. Alternatively, the court provided a rationale for the consecutive sentence by stating it would protect the victims from

---

**1.** Although the *Lindahl* defendant was charged with the criminal sexual conduct of rape, the defendant's argument that his crime was a specific intent crime was based on the statutory definition of assault. Defendant was charged under Minn.Stat. § 609.342 subd. 1(e)(i) (1978). In 1978, that crime included the element of force, and force was statutorily defined as the

commission of an assault. *Id.,* Minn.Stat. § 609.341, subd. 3 (1978). Defendant argued that the statutory definition of assault required specific intent and the statutory language of assault addressed by the *Lindahl* court is identical to the operable definition of assault in this case. *See id.;* Minn.Stat. § 609.02, subd. 10(2).

the defendant for an extended period of time.

 A defendant's dangerousness to society is a factor which bears on a dispositional departure, but not on a departure with respect to duration or consecutive service. *State v. Ott,* 341 N.W.2d 883, 884 (Minn.1984). Therefore, the stated rationale does not support the departure.

■ This court may review the entire record for any departure justification. *Williams,* 361 N.W.2d at 844. The state asserts that Michael Chandler's particular vulnerability and the family's presence during the assault justifies the departure for the terroristic threats conviction. Fortman maintains the aggravating factors described relate only to the assault conviction and may not justify the terroristic threats departure.

■ We agree with Fortman. The supreme court has noted that consecutive sentencing departures should rely upon aggravating factors related to that offense. *See Ott,* 341 N.W.2d at 884. *Ott* concluded:

> If evidence only supports defendant's guilt of some other offense but does not support the conclusion that the defendant committed the instant offense for which he is being sentenced in a particularly serious way, then it cannot be relied upon as a ground for departure.

*Id.* (citing *State v. Running,* 330 N.W.2d 119, 121 (Minn.1983) ("The issue is whether the evidence in question justifies the conclusion that defendant committed the offense in question in a particularly serious or cruel way.")). The trial court impermissibly based its departure for the terroristic threats offense on factors associated with the assault conduct.

We therefore hold the terroristic threats sentence improper. The trial court may have grounds for departure other than the reasons related to the assault. On remand, absent a statement of such additional grounds, the court shall impose the presumptive sentence.

Affirmed in part, vacated in part and remanded.