**STATE of Minnesota, Respondent,**

v.

**Ronald Gene FLECK, Appellant.**

**No. A10–681.**

Court of Appeals of Minnesota.

April 26, 2011.

Lori Swanson, Attorney General, Kelly O'Neill Moller, Assistant Attorney General, St. Paul, MN, Christopher Karpan, Douglas County Attorney, Alexandria, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Jodie L. Carlson, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by SHUMAKER, Presiding Judge; HALBROOKS, Judge; and SCHELLHAS, Judge.

## OPINION

HALBROOKS, Judge.

Appellant challenges his conviction of second-degree assault, arguing that the district court erred by failing to instruct the jury on the defense of voluntary intoxication. Because we conclude that the district court erred by not giving this instruction, we reverse and remand for a new trial.

## FACTS

At approximately 1:00 a.m. on January 23, 2009, K.W. returned to the home that she shared with appellant Ronald G. Fleck and found appellant in the kitchen, drinking. According to K.W., appellant had been drinking for "seven days straight." K.W. went into the bathroom but then heard appellant call her name. When K.W. turned around, she saw appellant with a knife; he then stabbed her. K.W. testified that appellant said something about "finishing [her] off" before he walked away. K.W. called appellant's sister-in-law, June, from the bathroom, but June did not answer. K.W. then dialed 911.

After the stabbing, appellant called his brother, Randy Fleck, and left a voicemail in which appellant stated that he had stabbed K.W., he was taking pills, and he

was going to die. Randy called back, but did not reach appellant. Randy then called their brother, Tim Fleck, and told Tim about the voicemail. Tim testified that when he spoke with appellant about a week before the incident, appellant had said that he had a vision of killing K.W., stabbing the dog, and then killing himself.

When officers responded to K.W.'s 911 call, they found appellant sitting on a chair in the living room. Appellant told the officers that he had taken 40 Seroquel pills. According to the officers, appellant was uncooperative and belligerent. K.W. was found sitting on the bathroom floor; she had a clean puncture wound in her upper chest near her shoulder. Officers discovered a 12-inch knife in the kitchen sink.

Approximately ten minutes after the officers arrived at the home, appellant began to lose consciousness. He became unresponsive to conversation and lost muscular control of his head. Both appellant and K.W. were taken to the hospital. Mark Odland, M.D., testified that appellant was unresponsive when he arrived at the emergency room. Appellant was given oxygen and was eventually intubated. Dr. Odland testified that appellant's blood test revealed an alcohol concentration of .315 at approximately 3:00 a.m. Dr. Odland stated that regular alcohol users are able to tolerate higher levels of alcohol consumption. June testified that when she and Tim arrived at the hospital, they were informed that appellant was in a coma and that his survival was uncertain. After appellant recovered, he told Sergeant David Alquist that he did not remember anything that occurred before waking up in the hospital.

Appellant was charged with one count of second-degree assault pursuant to Minn. Stat. § 609.222, subd. 1 (2008). The criminal code defines an assault as "an act done with intent to cause fear in another of

immediate bodily harm or death," or "the intentional infliction of or attempt to inflict bodily harm upon another." Minn.Stat. § 609.02, subd. 10 (2008).

Appellant notified the state of his intent to rely on the defense of voluntary intoxication and requested a jury instruction on this defense. The state objected to appellant's request for a voluntary-intoxication instruction on the ground that an assault based on the intentional infliction of bodily harm is a general-intent crime for which the instruction is not available. In support of its arguments, the state cited *State v. Lindahl*, 309 N.W.2d 763, 767 (Minn.1981), and *State v. Fortman*, 474 N.W.2d 401, 403–04 (Minn.App.1991), two cases stating that assault is a general-intent crime. Appellant's counsel acknowledged to the district court that *Fortman* had not been overruled and, according to her research, remained good law. The district court agreed with the state and denied appellant's request for an instruction on voluntary intoxication for assault based on appellant's alleged intentional infliction of bodily harm, but granted his request with respect to assault based on the commission of an act with intent to cause fear of immediate bodily harm.

Because appellant also requested the same instruction on the lesser-included offense of fifth-degree assault, the district court offered to instruct the jury on four separate counts in order to assist the jury in distinguishing between second- and fifth-degree assault based on the intentional infliction of bodily harm and second- and fifth-degree assault based on the commission of an act with intent to cause fear of immediate bodily harm. The district court indicated that it would instruct the jury that it could consider appellant's voluntary-intoxication defense only for the counts of second- and fifth-degree assault based on the commission of an act with intent to cause fear of immediate bodily

harm. The jury would be instructed that appellant's defense did not apply to either count of assault based on the intentional infliction of bodily harm. Neither party objected to the district court's proposed instructions.

The jury found appellant guilty of second- and fifth-degree assault based on the intentional infliction of bodily harm and acquitted appellant of the remaining counts. This appeal follows.

## ISSUE

Did the district court err by denying appellant's request for a jury instruction on the defense of voluntary intoxication related to the counts of assault based on appellant's intentional infliction of bodily harm?

## ANALYSIS

### I.

Appellant's defense at trial was that he was too intoxicated to have formed the intent necessary to have assaulted K.W. on January 23, 2009. Consistent with this theory of defense, appellant requested that the jury be given an instruction on voluntary intoxication. Minn.Stat. § 609.075 provides that

> [a]n act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind.

In order to receive a requested voluntary-intoxication jury instruction: "(1) the defendant must be charged with a specific-intent crime; (2) there must be evidence sufficient to support a jury finding, by a preponderance of the evidence, that the defendant was intoxicated; and

(3) the defendant must offer intoxication as an explanation for his actions." *State v. Torres*, 632 N.W.2d 609, 616 (Minn.2001). If the defendant demonstrates these elements, the district court must give the voluntary-intoxication instruction. *Id.* We review a district court's refusal to give a requested jury instruction for an abuse of discretion. *State v. Cole*, 542 N.W.2d 43, 50 (Minn.1996).

■ Because the district court concluded that appellant had demonstrated his intoxication by a preponderance of the evidence and had offered his intoxication as an explanation for his assault of K.W., the district court instructed the jury on the defense of voluntary intoxication as to the counts of assault based on an act committed with the intent to cause fear of immediate bodily harm. But the pivotal determination here and the threshold point in dispute between the parties is whether an assault based on the intentional infliction of bodily harm is a specific-intent crime. If it is a specific-intent crime, because appellant satisfied the required elements, he was entitled to an instruction on the defense of voluntary intoxication on those counts.

■ Specific intent requires proof that the defendant acted "with the intent to produce a specific result." *State v. Vance*, 734 N.W.2d 650, 656 (Minn.2007). A charged crime is one of general intent "if the only intent required is to do the act which is prohibited by the statute." *Lindahl*, 309 N.W.2d at 766. The issue here concerns the counts of assault defined as "the intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10(2). "Intentionally" means that, "the actor either has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause that result." Minn.Stat. § 609.02, subd. 9(3) (2008).

The state relies on *Lindahl* and *Fortman* in support of its position that an assault based on the intentional infliction of bodily harm is a general-intent crime. In *Lindahl*, the Minnesota Supreme Court held that the "force" element of a first-degree criminal-sexual-conduct charge required proof of general intent. 309 N.W.2d at 767. At that time, the criminal-sexual-conduct statute defined "force" by referring to the assault statute, and the defendant argued that because assault is a specific-intent crime, he was entitled to an instruction on the defense of voluntary intoxication. *Id.* The supreme court rejected that argument, reasoning that "an assault involving infliction of injury of some sort requires no abstract intent to do something further, only an intent to do the prohibited physical act of committing a battery." *Id.* This court subsequently applied the reasoning of *Lindahl* to a case involving an assault based on the intentional infliction of bodily injury, holding that this form of assault is a general-intent crime. *Fortman*, 474 N.W.2d at 403–04.

But seven years later, the supreme court addressed the essential elements of an assault charge and stated that "[a]ssault is a specific intent crime," requiring the state to prove beyond a reasonable doubt that the defendant intended to cause bodily harm. *State v. Edrozo*, 578 N.W.2d 719, 723 (Minn.1998). The supreme court reiterated this principle in *Vance*, 734 N.W.2d 650, a decision that specifically addressed jury instructions in an assault case. Because the district court in *Vance* had instructed the jury that it could find the defendant guilty of assault if the state proved that he intended to commit assault, rather than instructing the jury that it had to find that the defendant intended to cause the bodily harm, the supreme court reversed Vance's conviction. 734 N.W.2d at 656–57. The supreme court held that "intent to harm" is an essential element of

an assault based on the intentional infliction of bodily harm and again stated that "assault is a *specific intent* crime." *Id.* at 656, 657. Based on the principles enunciated by the supreme court in *Edrozo* and *Vance*, we conclude that the crime of assault based on the intentional infliction of bodily harm is a specific-intent crime.

While the state argues that *Lindahl* controls in this case, we disagree. *Lindahl* addressed this issue in the context of a criminal-sexual-conduct allegation. Criminal sexual conduct is a general-intent crime. *State v. Gerring*, 378 N.W.2d 94, 98 (Minn.App.1985). In *Gerring*, which was decided four years after *Lindahl*, this court held that assault is not a lesser-included offense of criminal sexual conduct, reasoning that criminal sexual conduct requires proof of general intent to commit the act, while an assault requires proof of criminal (or specific) intent to produce the specific result. *Id.* Thus, *Lindahl* is more properly construed as discussing the element of "force" in the context of a criminal-sexual-conduct charge, and we do not understand its holding to control in cases dealing directly with the elements of assault.

Because a charge of assault based on the intentional infliction of bodily harm is a specific-intent crime and because appellant met the other two statutory requirements in that he alleged that he was intoxicated and he offered intoxication as an explanation for his actions, appellant was entitled to a jury instruction on the defense of voluntary intoxication with respect to these counts of assault. Therefore, we conclude that the district court abused its discretion by failing to give this instruction.

## II.

But that does not end our inquiry. If the refusal to give a requested jury instruction is error, we must then determine whether the error was prejudicial.

*State v. Kuhnau*, 622 N.W.2d 552, 558 (Minn.2001). The state argues that we must analyze the district court's refusal to give appellant's voluntary-intoxication instruction for plain error because appellant ultimately failed to object to the district court's proposed instructions. *See Vance*, 734 N.W.2d at 655 (stating that if a defendant fails to object to a proposed instruction, the reviewing court analyzes the issue under the plain-error standard). In his pretrial request for jury instructions, appellant asked for a voluntary-intoxication instruction that would be applicable to both types of assault—intentional infliction of bodily harm and an act committed with the intent to cause fear of immediate bodily harm. And appellant reiterated this request to the district court during trial. While appellant agreed that *Fortman* remained good law, we conclude that this acknowledgement did not amount to a failure on appellant's part to object to this issue for purposes of appeal. We therefore examine the district court's failure to provide appellant's requested instruction for harmless error. *See State v. Lee*, 683 N.W.2d 309, 316 (Minn.2004) ("We evaluate the erroneous omission of a jury instruction under a harmless error analysis.").

The harmless-error inquiry requires an appellate court to "examine all relevant factors to determine whether, beyond a reasonable doubt, the error did not have a significant impact on the verdict." *State v. Shoop*, 441 N.W.2d 475, 481 (Minn. 1989). If the error might have prompted the jury to reach a harsher verdict than it might otherwise have reached, the defendant is entitled to a new trial. *Id.*

The evidence at trial was undisputed that appellant was heavily intoxicated on the night of the assault. K.W. testified that appellant had been drinking in the hours immediately before the assault as well as throughout the prior week. Two

hours after the assault, appellant had a .315 alcohol concentration. After hearing the evidence, the jury acquitted appellant of the two counts of an assault based on the commission of an act with the intent to cause fear of immediate bodily harm—the same two counts for which the jury was instructed that it could consider appellant's voluntary-intoxication defense. On this record, we are unable to say that, beyond a reasonable doubt, the failure to give appellant's requested instruction did not have a significant impact on the verdict. Therefore, the district court's decision not to instruct the jury that it could consider appellant's voluntary intoxication as a defense to the counts of assault based on the intentional infliction of great bodily harm was prejudicial error.

## DECISION

Because appellant was entitled to a jury instruction on the defense of voluntary intoxication for the counts of assault based on the intentional infliction of bodily harm and because that error was not harmless, we reverse and remand for a new trial.

**Reversed and remanded.**