**STATE of Minnesota, Appellant,**

v.

**Ronald Gene FLECK, Respondent.**

**No. A10–0681.**

Supreme Court of Minnesota.

Feb. 15, 2012.

Lori Swanson, Attorney General, Matthew Frank, Assistant Attorney General, St. Paul, MN; and Chad Larson, Douglas County Attorney, Alexandria, MN, for appellant.

David W. Merchant, Chief Appellate Public Defender, Jodi L. Carlson, Assistant State Public Defender, St. Paul, MN, for respondent.

Elizabeth J. Richards, Beverly Balos, St. Paul, MN, for amicus curiae Minnesota Coalition for Battered Women.

Rana Fuller, Minneapolis, MN, for amicus curiae Battered Women's Legal Advocacy Project.

Kristine Lizdas, Minneapolis, MN, for amicus curiae Battered Women's Justice Project.

OPINION

MEYER, Justice.

The issue presented is whether under Minn.Stat. § 609.075 (2010), a defendant is entitled to a voluntary intoxication jury instruction, when the State alleges an assault committed by the infliction of bodily harm (assault-harm). The State charged Ronald Gene Fleck with second-degree assault after he stabbed his former girlfriend. Fleck pleaded not guilty and demanded a jury trial. After all the evidence was presented to the jury, the district court submitted two forms of assault to the jurors: (1) assault-fear, Minn.Stat. § 609.02, subd. 10(1) (2010) (prohibiting an act done with the intent to cause fear in another of immediate bodily harm or death), and (2) assault-harm, Minn.Stat. § 609.02, subd. 10(2) (2010) (prohibiting the intentional infliction of bodily harm). The district court instructed the jurors that voluntary intoxication applied to an assault-fear offense, but not an assault-harm offense. The jury found Fleck not guilty of second-degree assault-fear but guilty of second-degree assault-harm. The court of appeals reversed Fleck's conviction, concluding the district court committed reversible error by failing to instruct the jury that voluntary intoxication applied to an assault-harm offense. Because we conclude the district court properly instructed the jury, we reverse the court of appeals' decision and reinstate Fleck's conviction.

Ronald Gene Fleck lived with K.W. in Alexandria, Minnesota. When K.W. returned home in the early morning hours of January 23, 2009, Fleck was in the kitchen, drinking alcohol (according to K.W., Fleck had been drinking for "seven days straight"). As K.W. walked toward the bathroom, she heard Fleck call her name. When K.W. turned around, she saw Fleck with a large butcher knife. Fleck then

stabbed K.W. once near her shoulder with an overhand motion. K.W. claimed that Fleck said something about "finishing [her] off" before he walked away. K.W. locked herself in the bathroom and called 911. Fleck then called his brother and sister-in-law, telling them about the stabbing and informing them that he was going to take his own life by ingesting sleeping pills.

Two officers from the Douglas County Sherriff's Department responded to the 911 call. On their arrival, the officers observed that Fleck was uncooperative and belligerent. Fleck told the officers he had taken 40 sleeping pills. Shortly after the officers arrived, Fleck became unresponsive and lost muscular control of his head and neck. Both Fleck and K.W. were taken to the hospital. At the hospital, Fleck was unresponsive and hospital tests revealed a blood alcohol level of 0.315.

Fleck was charged with second-degree assault with a dangerous weapon under Minn.Stat. § 609.222, subd. 1 (2010). Section 609.222 references Minn.Stat. § 609.02, subd. 10 (2010), which defines the offenses of assault-harm and assault-fear. Before trial, Fleck gave written notice that he would be relying on intoxication as a defense, and specifically requested a voluntary intoxication jury instruction.

At trial, the State presented evidence consistent with the facts outlined above. Fleck chose not to testify, but did call several witnesses to attest to his general character for peacefulness.

After the State's case-in-chief, the State asked the district court to submit only the assault-harm offense to the jury. Citing *State v. Fortman,* 474 N.W.2d 401 (Minn. App.1991), the State argued that the court should deny Fleck's request for a voluntary intoxication jury instruction because the assault-harm offense is a "general intent" crime to which voluntary intoxication does not apply.[1] Defense counsel urged the court to submit both the assault-harm offense and the assault-fear offense to the jury. Although defense counsel conceded that *Fortman* had not been "overruled or overturned ... or disparaged," defense counsel argued that Fleck was still entitled to a voluntary intoxication jury instruction because the assault-fear offense was certainly a "specific intent" crime.

The district court submitted both the assault-harm offense and the assault-fear offense to the jury. The court instructed the jury that voluntary intoxication applied to the assault-fear offense, but not the assault-harm offense.[2] Neither party objected to the court's jury instructions. The jury found Fleck not guilty of second-degree assault-fear and guilty of second-degree assault-harm. The court convicted Fleck of second-degree assault-harm and imposed a presumptive 27–month sentence.

On direct appeal, the court of appeals concluded that an assault-harm offense is a specific-intent crime. *State v. Fleck,* 797 N.W.2d 733, 738 (Minn.App.2011). Based on that conclusion, the court of appeals held the district court committed reversible error when it instructed the jury that

---

1. In *Fortman,* the court of appeals held that the district court did not abuse its discretion in refusing the defendant's request for a voluntary intoxication instruction in the context of a second-degree assault crime. *Id.* at 404.

2. The voluntary-intoxication statute reads: "An act committed while in a state of volun-

tary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind." Minn.Stat. § 609.075.

voluntary intoxication did not apply to the assault-harm offense. *Id.* The court of appeals reversed Fleck's conviction and remanded the case for a new trial. *Id.* at 739. We granted the State's petition for review.

We now consider whether under Minn. Stat. § 609.075, a defendant is entitled to a voluntary intoxication jury instruction when the State alleges an assault-harm offense. We begin our analysis by examining the language of Minn.Stat. § 609.075 to determine what type of offense is subject to a voluntary intoxication jury instruction. We then consider whether an assault-harm offense is the type of crime that is subject to a voluntary intoxication jury instruction. Finally, we clarify our decisions in *State v. Lindahl,* 309 N.W.2d 763 (Minn.1981), *State v. Edrozo,* 578 N.W.2d 719 (Minn.1998), and *State v. Vance,* 734 N.W.2d 650 (Minn.2007). Because we ultimately conclude that the district court properly instructed the jury, we reverse the court of appeals' decision and reinstate Fleck's conviction.

## I.

The State contends that the language of Minn.Stat. § 609.075, should be interpreted as applying to specific-intent crimes, not to general-intent crimes. We agree.

The de novo standard controls our review of statutory interpretation issues. *State v. Caldwell,* 803 N.W.2d 373, 382 (Minn.2011). When interpreting a statute, we must first determine "whether the statute's language, on its face, is clear or ambiguous." *State v. Randolph,* 800 N.W.2d 150, 154 (Minn.2011) (citation omitted) (internal quotation marks omitted). We "construe words and phrases according to their plain and ordinary meaning." *Id.* A statute is ambiguous only when the statutory language is subject to more than one reasonable interpretation.

*State v. Leathers,* 799 N.W.2d 606, 608 (Minn.2011). "If a statute is unambiguous, then we must apply the statute's plain meaning." *Larson v. State,* 790 N.W.2d 700, 703 (Minn.2010).

Section 609.075 provides: "An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind." Minn.Stat. § 609.075. In our past discussions of section 609.075, we have used the phrases "particular intent" and "specific intent" interchangeably. *See, e.g., State v. Torres,* 632 N.W.2d 609, 616 (Minn.2001) (explaining that to receive a voluntary intoxication defense, a defendant must be charged with a specific-intent crime); *City of Minneapolis v. Altimus,* 306 Minn. 462, 466, 238 N.W.2d 851, 854–55 (1976) (explaining that, "[t]he general rule in Minnesota is that voluntary intoxication is a defense to a criminal charge ... only if a specific intent or purpose is an essential element of the crime charged and the trier of fact concluded that the defendant's intoxication deprived him of the specific intent or purpose requisite to the alleged offense"). Our past discussions are consistent with the plain and ordinary meaning of the word "particular." *See* Black's Law Dictionary 1119 (6th ed.1990) (defining "particular" as "[r]elating to a part or portion of anything; separate; sole; single; individual; *specific;* local; comprising a part only; partial in extent; not universal. Opposed to general") (emphasis added). When viewed according to its plain and ordinary meaning, we conclude that the phrase "particular intent" as used in Minn.Stat. § 609.075, unambiguously refers to specific-intent crimes, not general-intent crimes.

## II.

We next consider whether an assault-harm offense is a general-intent or specific-intent crime. We have on occasion made references to the offense of "assault" without expressly acknowledging that the Legislature has defined two distinct forms of assault. To ensure precision in our analysis, we begin with a discussion of the two distinct forms of assault recognized by the Legislature.

The first form of assault is assault-harm. A person commits the offense of assault-harm through "the intentional infliction of ... bodily harm upon another." Minn. Stat. § 609.02, subd. 10(2). "Bodily harm" means "physical pain or injury, illness, or any impairment of physical condition." Minn.Stat. § 609.02, subd. 7 (2010).

The second form of assault is assault-fear. A person commits the offense of assault-fear through "an act done with intent to cause fear in another of immediate bodily harm or death." Minn. Stat. § 609.02, subd. 10(1). An assault-fear offense "does not require a finding of actual harm to the victim." *State v. Hough*, 585 N.W.2d 393, 395 (Minn.1998). Instead, the assault-fear statute is violated when one engages in an act "with the intent" to cause fear in another of immediate bodily harm or death. *Id.* In an assault-fear crime, "[t]he intent of the [defendant], as contrasted with the effect upon the victim, becomes the focal point for inquiry." *Id.* at 396 (citation omitted) (internal quotation marks omitted). With the two forms of assault in mind, we consider the distinction between general-intent and specific-intent crimes.

When a statute simply prohibits a person from intentionally engaging in the prohibited conduct, the crime is considered a general-intent crime. 1 Wayne R. La-Fave, *Substantive Criminal Law* § 5.2(e) (2nd ed.2003) (explaining that general intent only requires an "intention to make the bodily movement which constitutes the act which the crime requires"); *see also In re Welfare of C.R.M.*, 611 N.W.2d 802, 808 n. 10 (Minn.2000) (explaining that "[g]eneral intent requires only that the defendant engaged intentionally in specific, prohibited conduct"); *cf. State v. Damuth*, 135 Minn. 76, 80, 160 N.W. 196, 198 (1916) (explaining that "it was sufficient to a conviction that [the defendant] wrongfully intended to strike the blow which blinded [the victim], although he had no intent to put out his eye"); 9 Henry W. McCarr & Jack S. Nordby, *Minnesota Practice—Criminal Law and Procedure* § 44.3 (3d ed.2001) (explaining that a general-intent crime only requires proof that "the defendant intended to do the physical act forbidden, without proof that he meant to or knew that he would violate the law or cause a particular result").

Unlike a general-intent crime, a specific-intent crime requires an "intent to cause a particular result." McCarr & Nordby, *supra*, § 44.3; *see also In re C.R.M.*, 611 N.W.2d at 808 n. 10. Although "specific intent" is sometimes used to refer to the "mental state of intent," "the most common usage of 'specific intent' is to designate a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime." LaFave, *supra*, § 5.2(e). The phrase "with intent to" is commonly used by the Legislature to express a specific-intent requirement.[3] *State*

---

**3.** The Legislature has provided that "[w]hen criminal intent is an element of a crime in [Minn.Stat. ch. 609], such intent is indicated by the term 'intentionally,' the phrase 'with intent to,' the phrase 'with intent that,' or some form of the verbs 'know' or 'believe.' " Minn.Stat. § 609.02, subd. 9(1) (2010). The Legislature has defined the phrase "with in-

*v. Mullen,* 577 N.W.2d 505, 510 (Minn. 1998).

■ However, regardless of whether an offense is described as a specific- or general-intent crime, "a defendant must voluntarily do an act or voluntarily fail to perform an act." McCarr & Nordby, *supra,* § 44.5; *see also State v. Kremer,* 262 Minn. 190, 192, 114 N.W.2d 88, 89 (1962) (explaining that no conviction could stand where the trier of fact found that the defendant "was unable to stop because the brakes on his car failed to operate; that he had experienced no prior brake trouble; and that he had no knowledge that his brakes were defective"). The volitional requirement is "generally expressed in terms of an exercise of the will. A reflex movement is not subject to the control of the will." McCarr & Nordby, *supra,* § 44.5. Similarly, an act resulting from a person's faultless inability to comply with the law is ordinarily not criminally punishable, because the act is not a result of the actor's will. *Id.*

■ The parties concede that an assault-fear offense under Minn.Stat. § 609.02, subd. 10(1), is a specific-intent crime. This concession is consistent with both the most common usage of the phrase "specific intent" and the Legislature's use of the phrase "with intent to." The definition of assault-fear requires the State to prove the defendant committed an act with an additional special mental element—specifically: "an act done *with intent to* cause fear in another of immediate bodily harm or death." Minn.Stat. § 609.02, subd. 10(1) (emphasis added). Because an assault-fear offense is a specific-intent crime, we conclude that the district court properly instructed the jurors that they could

consider Fleck's voluntary intoxication in determining whether he intended to cause K.W. to fear immediate bodily harm or death. *See State v. Matthews,* 779 N.W.2d 543, 549 (Minn.2010) (explaining that "if the instructions, when read as a whole, correctly state the law in language that can be understood by the jury, there is no reversible error") (citation omitted) (internal quotation marks omitted).

■ The parties disagree on the issue of whether an assault-harm offense under Minn.Stat. § 609.02, subd. 10(2), is a general-intent or specific-intent crime. The State claims an assault-harm offense is a general-intent crime, while Fleck claims an assault-harm offense is a specific-intent crime. We conclude that assault-harm is a general-intent crime and, therefore, the district court did not err in concluding that assault-harm is not the type of crime that is subject to a voluntary intoxication jury instruction.

The Legislature defined assault-harm as "the intentional infliction of ... bodily harm upon another." Minn.Stat. § 609.02, subd. 10(2). The forbidden conduct is a physical act, which results in bodily harm upon another. Although the definition of assault-harm requires the State to prove that the defendant intended to do the physical act, nothing in the definition requires proof that the defendant meant to violate the law or cause a particular result. If the Legislature intended to require an additional, special mental element, it could have defined assault-harm as "an act done with the intent to cause bodily harm to another." This is especially true because the Legislature used the phrase "with intent to" when defining assault-fear in the same statutory section. Consequently, we hold that assault-harm, as defined by

tent to" as "the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause

that result." Minn.Stat. § 609.02, subd. 9(4) (2010).

Minn.Stat. § 609.02, subd. 10(2), is a general-intent crime. Therefore, the district court properly instructed the jurors that they could not consider Fleck's voluntary intoxication when determining whether Fleck was guilty of intentional infliction of bodily harm. *See Matthews*, 779 N.W.2d at 549.

### III.

Fleck contends that in *Lindahl, Edrozo,* and *Vance,* we made conflicting statements on the issue of whether assault-harm is a general intent crime. We acknowledge that our use of imprecise language has created some confusion in the law and we now take this opportunity to clarify and harmonize our decisions in *Lindahl, Edrozo,* and *Vance.*

In *Lindahl,* the defendant was charged with the offense of criminal sexual conduct involving force. 309 N.W.2d 763, 764 (Minn.1981). Force was defined in the statute as the commission or threat of an assault, which required us to determine whether assault is a specific- or general-intent crime. *Id.* at 767. The defendant argued on appeal that it was error for the district court to fail to give the voluntary intoxication instruction. *Id.* at 766. We held that the court had not abused its discretion in refusing to give the requested instruction because the assault at issue was not a specific-intent crime. *Id.* at 767. We explained that "an assault involving infliction of injury of some sort requires no abstract intent to do something further, only an intent to do the prohibited physical act of committing a battery." *Id.* We further explained that because the assault in question "took the form of actual infliction of bodily harm as opposed to the more abstract form of assault involving intent to create fear of harm," the State was only required to prove that "the blows to com-

plainant were not accidental but were intentionally inflicted." *Id.*

Fleck contends that the analysis in *Lindahl* should not be extended to cases that involve an assault-harm offense because *Lindahl* was not charged with an assault-harm offense, but was charged instead with the offense of criminal sexual conduct involving force. We disagree.

The assault-harm analysis in *Lindahl* is well-reasoned and consistent with the definition of a general-intent crime—an offense that only requires proof that "the defendant intended to do the physical act forbidden." Consequently, we reject Fleck's argument that the analysis in *Lindahl* should not be extended to cases that involve an assault-harm offense.

In *Edrozo,* which was decided 17 years after *Lindahl,* the issue was whether the trial court's suppression of the defendant's statements would have a critical impact on the prosecution of the case. 578 N.W.2d 719, 722–23 (Minn.1998). The State charged Edrozo with second-degree assault arising out of an incident in which Edrozo unsuccessfully tried to run over the victims with his vehicle. *Id.* at 721–22. In determining whether the State's case was critically impacted by the suppression of Edrozo's confession that he intentionally tried to hit the victims with his vehicle, we stated that "[a]ssault is a specific intent crime. The prosecutor must prove beyond a reasonable doubt that the defendant either (1) acted with intent to cause fear in another of immediate bodily harm or death; or (2) intentionally inflicted or attempted to inflict bodily harm on another." *Id.* at 723. We did not discuss *Lindahl* nor did we cite any persuasive legal authority supporting our broad statement that assault is a specific-intent crime. Ultimately, we held that the State had established critical impact because Edrozo's "confession [was] important to the state's

burden of proving [Edrozo's] state of mind."

At first blush our statement in *Edrozo* that "[a]ssault is a specific-intent crime" appears to be in direct conflict with *Lindahl*. However, it is unreasonable to conclude that *Edrozo* overruled *Lindahl*'s assault-harm analysis without any discussion of *Lindahl* or citation to any authority. A more reasonable interpretation of our statement in *Edrozo* that "[a]ssault is a specific-intent crime" is that our general reference to "assault" was not intended to encompass an assault-harm offense, especially when *Edrozo* did not involve an allegation of intentional infliction of bodily harm.

In *Vance*, we discussed the fundamental issue of instructing the jury on all elements of assault. 734 N.W.2d 650, 656–57 (Minn.2007). The district court had followed the standard jury instruction at the time that omitted the definition of "assault." *Id.* at 657. The victim testified that Vance punched her in the mouth and then came after her and leapt at her. *Id.* at 653. Vance claimed that as he lunged to protect the victim from driving away in an inebriated state, she tripped, and he accidentally fell on top of her breaking her collar bone. *Id.* at 654. Because the jury instruction in *Vance* allowed the jury to find Vance guilty of an assault-harm offense even if the jury believed he engaged in nonvolitional conduct (accidentally falling on the victim), reversal was required. *Id.* at 662–63; *see also* McCarr & Nordby, *supra*, § 44.5 (stating that "[r]egardless of

whether an offense is described as a specific or general intent crime or strict liability crime, a defendant must voluntarily do an act or voluntarily fail to perform an act"); *Lindahl*, 309 N.W.2d at 767 (explaining that the State must prove that the blows were not accidental but were intentionally inflicted).

We began our analysis in *Vance* of specific-intent and general-intent crimes with the erroneous premise that all forms of assault are specific-intent crimes. 734 N.W.2d at 656. Based on our erroneous premise that the intentional infliction of bodily harm was a specific-intent crime, we said the State must "prove that [Vance] intentionally inflicted bodily harm." *Id.* We did not reconcile our erroneous premise with the assault-harm analysis in *Lindahl*, much less mention *Lindahl*. Because that discussion compounded the confusion created by our imprecise statement in *Edrozo* that assault is a specific-intent crime, we now clarify our discussion in *Vance* of specific-intent and general-intent crimes.[4] For the reasons set forth in section II of this opinion, we now expressly reject our erroneous discussion of specific-intent and general-intent crimes in *Vance*, precisely, the erroneous premise that assault-harm, Minn. Stat. § 609.02, subd. 10(2) (prohibiting the intentional infliction of bodily harm) is a specific-intent crime.

Although our reliance on *Edrozo* caused us to initially mislabel the concern in *Vance* as "the possibility that the jury convicted Vance without finding that he

---

**4.** Although the confusion created by our statements in *Edrozo* and *Vance* is regrettable, issues relating to criminal intent are often difficult and complex in part because of the various uses of the word "intent" in criminal law. *See State v. Orsello*, 554 N.W.2d 70, 72 (Minn.1996) (explaining that "[t]he meaning of the word 'intent' in criminal law is, given its use in so many similar terms, at the very least, confusing"), *superseded by statute on other grounds*; LaFave, *supra*, § 5.2(e) (explaining that "[m]uch of the existing uncertainty as to the precise meaning of the word 'intent' is attributable to the fact that courts have often used such phrases as 'criminal intent,' 'general intent,' 'specific intent,' 'constructive intent,' and 'presumed intent' ").

intended to cause bodily harm," 734 N.W.2d at 657, our chief concern was that the erroneous jury instruction allowed the jury to find Vance guilty of an assault-harm offense even if they believed the victim's injuries were the result of Vance's nonvolitional act—accidentally falling on the victim after she tripped, *id.* at 662. The outcome in *Vance* was correct—Vance was entitled to a new trial because the erroneous jury instruction allowed the jury to find him guilty of an assault-harm offense even if the jury believed Vance engaged in nonvolitional conduct. Therefore, there is no need to overrule that aspect of *Vance* nor the result we reached in that case.

In sum, our earlier statements that "assault is a specific intent crime" led to confusion in the law because the statements failed to acknowledge the two distinct forms of assault recognized by the Legislature. We now clarify that assault-harm, Minn.Stat. § 609.02, subd. 10(2) (prohibiting the intentional infliction of bodily harm), is a general-intent crime, that assault-fear, Minn.Stat. § 609.02, subd. 10(1) (prohibiting an act done with the intent to cause fear in another of immediate bodily harm or death) is a specific-intent crime, and that the voluntary intoxication statute applies to specific-intent crimes, not general-intent crimes.[5] Because the district court properly instructed the jury on the law, we reverse the court of appeals' decision and reinstate Fleck's conviction.

Reversed, judgment of conviction reinstated.

---

**5.** We need not, and do not, address Fleck's argument that an attempt to inflict bodily harm is a specific-intent crime because the facts of Fleck's case involve the actual infliction of bodily harm.