*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0625**

State of Minnesota,
Respondent,

vs.

Cole Lyle Kjellberg,
Appellant.

**Filed May 26, 2015
Reversed
Peterson, Judge**

St. Louis County District Court
File No. 69VI-CR-13-345

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Duluth, Minnesota; and

Gordon P. Coldagelli, Assistant County Attorney, Virginia, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Peterson, Judge; and Harten, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**PETERSON**, Judge

In this appeal from a conviction of third-degree assault, appellant argues that the evidence was insufficient to prove beyond a reasonable doubt that the victim's injury was the result of appellant's intentional act. We reverse.

**FACTS**

Appellant Cole Lyle Kjellberg took care of his two-week-old daughter, D.G.K., while his wife, R.K., went to an appointment. Approximately 30-45 minutes after R.K. returned home, Kjellberg asked her to look at the sleeping baby to see if she looked normal. The baby had no visible injury when R.K. left earlier in the morning, but when she looked at her, she could see a bump on the baby's head. R.K. asked Kjellberg what happened, and he gave no explanation, but he said that they should go to the emergency room. Before leaving, Kjellberg cut some wood and stoked the wood stove. He also suggested that R.K. go alone with the baby to the emergency room, although they eventually went together.

After examining D.G.K., the medical staff in the local emergency room sent her by ambulance to a hospital in Duluth. D.G.K. was hospitalized in Duluth for a head injury.

When Kjellberg and R.K. returned home to get a diaper bag before going to Duluth, a deputy sheriff met them and took Kjellberg to the sheriff's office in Virginia for questioning. During the ride, Kjellberg talked to the deputy who was driving. The

2

deputy testified that Kjellberg was "visibly upset," "felt remorse and . . . guilt," and said "he thought he had messed up and made a mistake."

At the sheriff's office, Kjellberg waived his *Miranda* rights and agreed to a recorded interview with the investigating officer. The investigating officer described Kjellberg as "very frantic. At times he spoke so fast I had to slow him down. He seemed to be on an emotional roller coaster; he would go from being angry and gritting his teeth to weeping."

Kjellberg's interview was rambling and diffuse. He was remorseful and very sad about the injury. He offered different explanations for the injury: he may have dropped his cellphone on D.G.K.'s head; he stubbed his toe or tripped at the top of the stairs and almost dropped her; he bumped her head on the stairway wall; he was trying to juggle feeding her, answering the door, responding to his cellphone, picking up the mail, and signing for a package; she wiggled in his arms and banged her head; she wiggled in his arms and he caught her against the wall.

In the course of the interview, Kjellberg admitted to having a problem with anger. He said that he took medication for attention-deficit disorder and post-traumatic-stress disorder and smoked marijuana to relieve the symptoms; he also mentioned other drug use. He responded to questions about a past incident of child abuse that involved a different child.

Kjellberg was charged with two counts of third-degree assault, two counts of malicious punishment of a child, and one count of felony domestic assault. Two of the

3

charges were dismissed, and Kjellberg was tried before a jury on one count each of third-degree assault, felony domestic assault, and malicious punishment of a child.

With the prosecutor's agreement, the district court granted defense counsel's motion in limine to exclude all medical references to the child's injury because the state did not intend to call any medical witnesses. After the prosecutor agreed not to offer *Spreigl* evidence, defense counsel agreed that Kjellberg's entire recorded interview could be played for the jury. A deputy sheriff who testified at trial described the injury as a "lump on the right side of [D.G.K.'s] head." There was no expert testimony about how such an injury could have occurred or what force was necessary to raise a "lump" of that size. Kjellberg did not testify.

During deliberations, the jury asked the district court three questions: "One, can the act of neglect be intent? Two, can intent show itself in other forms? Three, definition of intent." In response, the district court gave an additional instruction:

> "Intentionally" means that the actor either has a purpose to do the thing or cause the result specified, or believes that the act performed by the actor, if successful, will cause the result. In addition, the actor must have knowledge of those facts that are necessary to make the actor's conduct criminal and that are set forth after the word "intentionally."

After further deliberations, the jury found Kjellberg guilty of all three counts. The district court sentenced Kjellberg on the third-degree-assault charge and dismissed the remaining charges. This appeal followed.

4

**D E C I S I O N**

When reviewing a claim that the evidence was insufficient, we view the evidence in the light most favorable to the verdict and assume that the fact-finder disbelieved evidence that conflicted with the verdict. *State v. Porte*, 832 N.W.2d 303, 307 (Minn. App. 2013). "We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." *Id.* (quotation omitted).

To sustain a conviction of third-degree assault, the state needed to prove beyond a reasonable doubt that Kjellberg assaulted a child under the age of four and caused bodily harm to the child's head, eyes, or neck. Minn. Stat. § 609.223, subd. 3 (2012). "'Assault' is: (1) an act done with intent to cause fear in another of immediate bodily harm or death; or (2) the intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10 (2012). "'Intentionally' means that the actor either has a purpose to do the thing or cause the result specified or believes that the act performed by the actor, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(3) (2012).

The evidence of Kjellberg's intent is circumstantial. When presented with the question of whether circumstantial evidence supports a guilty verdict, the reviewing court first identifies "the circumstances proved, giving deference to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved." *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011)

5

(quotations omitted). The reviewing court then independently determines "the reasonableness of all inferences that might be drawn from the circumstances proved, including inferences consistent with a hypothesis other than guilt." *Id.* (quotation omitted). The evidence should be viewed as a whole, and not as individual, isolated facts. *Id.* (quotations omitted).

In the second step of analysis, the reviewing court determines whether the circumstances found by the jury are consistent with guilt and inconsistent with any rational hypothesis except guilt. *State v. Silvernail*, 831 N.W.2d 594, 599 (Minn. 2013). The reviewing court does not defer to "the fact finder's choice between reasonable inferences." *Id.* (quotation omitted). "In assessing the inferences drawn from the circumstances proved, the inquiry is not simply whether the inferences leading to guilt are reasonable. Although that must be true in order to convict, it must also be true that there are no other reasonable, rational inferences that are inconsistent with guilt." *State v. Andersen*, 784 N.W.2d 320, 330 (Minn. 2010) (quotation omitted). Kjellberg argues that the circumstances found are equally consistent with an accident and do not show that he intentionally injured D.G.K. or committed an intentional act that caused the injury.

The state presented no medical evidence; the only testimony about the injury described it as a "lump on the right side of [D.G.K.'s] head." The state's witnesses included sheriff's deputies and the child's mother. They were not present when the injury occurred. The only evidence about what happened to D.G.K. was the comments that Kjellberg made while being transported to the sheriff's office and his rambling statement at the station, in which he offered various descriptions of what he thought had

6

happened. He stated that (1) he had been up all night and had not slept; (2) he was angry with the disruptions that occurred while he was trying to feed D.G.K., and he ran down the steps and banged the child's head into the wall while dealing with these disruptions; (3) he banged her head on the wall going up the steps; (4) he carried the baby incorrectly; (5) he stubbed his toe on the top landing and the child squirmed and he almost dropped her; (6) he stubbed his toe and she "wigglewormed" and he could not quite get to her head because he was holding his phone and he grabbed her by the neck; (7) he tripped on the top step and had to hold her against the wall to keep from dropping her; (8) he may have dropped his cellphone on the child or he may have elbowed the child; and (9) he made all kinds of mistakes and "messed up." Also, a deputy described Kjellberg as visibly upset and remorseful, and the jury heard that Kjellberg never explained to his wife what happened, waited a while before asking the child's mother to look at her, delayed before going to the hospital, and suggested that the child's mother take her to the emergency room by herself.

Much of this evidence is conflicting, but a jury is free to reject conflicting evidence. *State v. Stein*, 776 N.W.2d 709, 715 (Minn. 2010). "Where the jury has rejected conflicting facts and circumstances, [the reviewing court does] not draw competing inferences from those facts on appeal." *Id.* "[T]he jury is in the best position to evaluate the credibility of the evidence even in cases based on circumstantial evidence." *State v. Sterling*, 834 N.W.2d 162, 175 (Minn. 2013). While we cannot determine precisely which circumstances the jury found to be proved, it is apparent that

7

the jury found that D.G.K. was injured while she was being cared for by Kjellberg, he was responsible for the injury, and his explanations for the injury were not credible.

Even if the jury found that Kjellberg was not credible, however, the evidence in this record does not support a finding that D.G.K.'s injury was caused by Kjellberg's intentional act. None of Kjellberg's conflicting scenarios included an intentional act that caused the injury or demonstrated intent to harm the child. His actions may have been careless or negligent, and the child may have been injured accidentally, rather than intentionally assaulted. The state offered no evidence that the injury could only have been caused by an intentional act or that it could not have been caused by any of the circumstances that Kjellberg described. Kjellberg's delay in seeking medical treatment, failure to be candid with his wife, and feelings of remorse could follow either an accidental or an intentional injury.

Assault that causes bodily harm is a general-intent crime. *State v. Fleck*, 810 N.W.2d 303, 312 (Minn. 2012). "[R]egardless of whether an offense is described as a specific- or general-intent crime, a defendant must voluntarily do an act or voluntarily fail to perform an act." *Id.* at 309 (quotaton omitted). "The volitional requirement is generally expressed in terms of an exercise of the will. A reflex movement is not subject to the control of the will." *Id.* (quotation omitted). It is reasonable to infer from the limited circumstances proved here that D.G.K.'s injury was caused by an involuntary, unintentional act. Because this reasonable, rational inference is inconsistent with Kjellberg's guilt, we reverse his conviction of third-degree assault.

Because we are reversing Kjellberg's conviction due to the insufficiency of the evidence, it is not necessary for us to address his alternative arguments that he is entitled to a new trial because the prosecutor committed misconduct.

**Reversed.**