STRAS, Justice
(concurring).
This case requires us to determine the elements of the felony offense of fourth-degree assault of a police officer, Minn. Stat. § 609.2231, subd. 1 (2014). Specifically, we must decide whether, to commit felony fourth-degree assault, a person must both “physically assault[ ]” an officer and “intentionally throw[] or otherwise transfer[ ] bodily fluids or feces at or onto” the officer. Id. On that question, I agree with the court that the district court erred when it failed to instruct the jury that it had to find that Struzyk both physically assaulted Deputy Sheriff Kadlec and intentionally threw or otherwise transferred bodily fluids onto him. I write separately, however, because I disagree with the court’s conclusion that the statute, as drafted, is unambiguous.
I.
To protect peace officers acting within the lawful performance of their duties, the Legislature enacted Minn.Stat. § 609.2231, subd. 1, which recognizes the offense of fourth-degree assault against peace officers. The statute provides that
[w]hoever physically assaults a peace officer licensed under section 626.845, subdivision 1, when that officer is effecting a lawful arrest or executing any other duty imposed by law is guilty of a gross misdemeanor and may be sentenced to imprisonment for not more than one year or to payment of a fine of not more than $3,000, or both. If the assault inflicts demonstrable bodily harm or the person intentionally throws or otherwise *292 transfers bodily fluids or feces at or onto the officer, the person is guilty of a felony and may be sentenced to imprisonment for not more than three years or to payment of a fine of not more than $6,000, or both.
Minn.Stat. § 609.2231, subd. 1.
The first sentence of the statute creates a condition, otherwise referred to as an attendant circumstance, for the offense: it applies only when the officer is performing a lawful arrest or executing a duty imposed by law. It also identifies the act required to commit the misdemeanor version of the offense: a physical assault. The second sentence creates a felony version of fourth-degree assault of a peace officer that is limited to a particular act— “intentionally throwing] or otherwise transferring] bodily fluids or feces at or onto the officer” — or the accomplishment of a specific result — “inflict[ing] demonstrable bodily harm” on the officer.
A.
The issue presented in this case is the degree of independence between the first and second sentences of the statute. As Struzyk’s petition for review put it, is the single act of transferring bodily fluids onto an officer sufficient, standing alone, to constitute a fourth-degree felony assault, or must the “transfer be accompanied by a physical assault?”
One reasonable interpretation of the statute, which is a variation on the State’s argument, is that the two sentences of the statute provide separate ways to commit the offense of assault of a peace officer, with the alternate ■ elements listed in the second sentence creating a more serious, felony version of the offense. This interpretation, which I refer to as the per-se assault interpretation, reflects a legislative judgment that the act of intentionally throwing or otherwise transferring bodily fluids at or onto an officer is itself a physical assault. Implicit is the idea that the transfer of bodily fluids necessarily constitutes a physical assault because the adverb “physically,” used in the first sentence, refers to that which is “[o]f or relating to the body” or is “[involving or characterized by vigorous or forceful bodily activity: physical aggression.” The American Heritage Dictionary of the English Language 1331 (5th ed.2011). Throwing or otherwise transferring bodily fluids requires physical action, usually aggressive physical action that is intended to cause fear or harm, so it would be redundant to prove both a physical assault and a transfer of bodily fluids. See Minn.Stat. § 609.02, subd. 10 (2014) (defining assault).
The other reasonable interpretation of the statute, advanced by Struzyk, is that the first sentence defines the offense of fourth-degree assault on a police officer, and that the second- sentence, with its additional elements, sets forth an aggravated form of the same offense. Struzyk’s interpretation, which treats the second sentence as a sentence enhancement, would require the State to prove both a physical assault and the intentional transfer of bodily fluids to convict a person of felony fourth-degree assault of a peace officer. Under this interpretation, the physical assault and the transfer of bodily fluids can be two separate acts, but can also occur simultaneously if, for example, the act of throwing or transferring bodily fluids also constitutes a physical assault. Struzyk’s interpretation therefore treats the two sentences as additive rather than separate.
B.
Because the statute has two reasonable interpretations, it is ambiguous. When a statute is ambiguous, we may consider the canons of statutory construction to ascertain its meaning. See State v. Nelson, 842 *293 N.W.2d 433, 443 (Minn.2014). Here, although both interpretations are reasonable, the better of the two is the sentence-enhancement interpretation: the State must prove both a physical assault and an intentional transfer of bodily fluids or feces onto an officer to convict a person of felony fourth-degree assault.
As Struzyk notes, there are textual clues that the two sentences of the statute are additive, not separate. First, the antecedent for “the assault” referenced in the second sentence is the physical assault described in the first sentence. As we have held, the “definite article ‘the’ is a word of limitation that indicates a reference to a specific object.” State v. Hohenwald, 815 N.W.2d 823, 830 (Minn.2012). Rather than referring to an unspecified assault, the second sentence refers to a specific object— here, the assault from the first sentence.
Second, “the person” from the second sentence can only be the “whoever” from the first sentence, because the only other person specified — the peace officer — cannot assault himself. Indeed, the statute itself, when referring to the “peace officer,” consistently uses the word “officer” to distinguish between the person committing the offense and the officer, who is the victim of the offense. Thus, “the person” referred to in the second sentence is the person who “physically assaults” the peace officer.
Third, the second sentence begins with the word “if,” meaning “provided,” which, read in context, provides a connection between the first and second sentences of the statute. See, e.g., Bagnall v. Bagnall, 148 Tex. 423, 225 S.W.2d 401, 402 (1949) (“The use of [the] word [if] in itself implies a condition; it means ‘provided,’ or ‘in case that.’ ”); see also American Heritage Dictionary, 874 (stating that “if’ means “[in] the event that” or ‘.‘[o]n the condition that”). The use of the word “if’ conditions the classification of the crime and the penalty on satisfaction of one of the two requirements — an intentional transfer' of bodily fluids or demonstrable bodily harm — listed at the beginning of the second sentence. See The Chicago Manual of Style 5. 201 (16th ed.2010) (describing the use of “if’ as a subordinating conjunction that states a condition or an assumption). But it also serves another purpose: by having the word “if’ precede “the assault” — which, as stated above, is a reference to the assault defined in the first sentence — the second sentence links itself to the first.
Fourth, the assumption underlying the per-se assault interpretation is flawed. It simply is not true that the intentional act of throwing or transferring bodily fluids at or onto an officer, by itself, is necessarily a physical assault. It is easy to envision a situation in which a person could intentionally transfer bodily fluids onto a peace officer without either intending that the officer fear immediate bodily harm or death (assault-féar) or intending to inflict bodily harm on the officer (assault-harm).[1] See generally State v. Fleck, 810 N.W.2d *294 303, 309 (Minn.2012) (defining assault-fear and assault-harm). This could happen, for example, if a bloody victim reaches out to an officer for assistance. Because the victim has neither committed assault-harm nor assault-fear against the officer, even though he or she has intentionally transferred blood onto the officer, the lack of a physical assault should prevent the State from later prosecuting the victim for felony assault of a peace officer.
Accordingly, to convict a person of gross-misdemeanor assault of a peace officer, the State must prove that the person: (1) physically assaulted a peace officer, and that (2) the officer was conducting a lawful arrest or executing another duty imposed by law. Minn.Stat. § 609.2231, subd. 1. To convict a person of the felony version of the offense, the State must prove that a person: (1) completed each of the elements of gross-misdemeanor assault of a peace officer; and (2) either inflicted demonstrable bodily harm on the officer or intentionally .threw or otherwise transferred bodily fluids or feces at or onto the officer.
II.
For the foregoing reasons, I would reverse the decision of the court of appeals and remand for a new trial on the charge of fourth-degree assault of a peace officer.[2]

. The statute does not define the phrase "physically assaults,” and no other assault statute uses this phrase. The parties and the district court assumed that it refers only to "assault-harm,” which requires proof that the defendant inflicted, or attempted to inflict, bodily harm on the officer. See Minn.Stat. § 609.02, subd. 10(2) (defining assault-harm). Their assumption was mistaken. By adding the adverb "physically” to the word "assaults,” the statute indicates that the act underlying the assault must be physical in nature; it does not mean that only an assault-harm will suffice. Assault-fear can, and often does, involve a physical act, which if intended to create fear in an officer, is sufficient to constitute a "physical assault.” However, in those instances in which assault-fear includes only verbal threats against an officer, a person cannot be convicted of a violation of Minn.Stat. § 609.2231, subd. 1, because there has been no physical assault of an officer.

. I agree with the court that retrying Struzyk on the felony charge would not create a double-jeopardy problem because the charge of gross-misdemeanor, fourth-degree assault of which Struzyk was acquitted involved different underlying facts. Moreover, even if both charges involved identical facts, there still would be no double-jeopardy violation because, under my interpretation of the phrase "physically assaults,” the district court’s instructions on the gross-misdemeanor charge, which included only an assault-harm theory, erroneously omitted the assault-fear theory, the addition of which would allow the felony charge to involve a different element on remand. See Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (stating that if one crime requires proof of an additional fact that another crime does not, then the offenses are not the same for double-jeopardy purposes). The jury has never considered whether Struzyk physically assaulted Deputy Kadlec based on an assault-fear theory.
Of course, the fact that the district court gave an incorrect instruction on the physical-assault element has no bearing on Struzyk’s acquittal of the gross-misdemeanor charge. See State v. Sahr, 812 N.W.2d 83, 92 (Minn. 2012) (stating that double-jeopardy principles preclude review of an erroneous legal ruling after an acquittal). Instead, it just means that the State would not violate Struzyk’s double-jeopardy rights if it were to retry him on the felony charge, one of the two offenses of which the jury found him guilty after the trial.